HOUSE SPEAKER v STATE ADMINISTRATIVE BOARD

Docket No. 140914. Submitted June 20, 1991, at Detroit. Decided July 9, 1991, at 9:25 A.M. Leave to appeal sought.

Lewis N. Dodak, Speaker of the House of Representatives, Dominic J. Jacobetti, Chairman of the House Appropriations Committee, Arthur J. Miller, Jr., Senate Minority Leader, and David S. Holmes, Jr., Vice-Chairman of the Senate Appropriations Committee, brought an action in the Ingham Circuit Court against the State Administrative Board and the following members of the board, Governor John M. Engler, State Treasurer Douglas B. Roberts, and State Budget Director Patricia Woodworth, seeking an injunction against the implementation of several resolutions adopted by the board on May 9, 1991, authorizing the intertransfer of funds appropriated by the Legislature, i.e., transfers of funds from one purpose or program within a department of state government to another purpose or program within that department. The court, Thomas L. Brown, J., pursuant to a stipulation of the parties, issued a preliminary injunction against implementation of the intertransfers, and subsequently granted summary disposition for the defendants, ruling that the plaintiffs lacked standing to sue and finding no merit in their claims that the board exceeded its statutory authority and violated the Michigan Constitution in making the challenged intertransfers. The plaintiffs appealed. The Court of Appeals granted immediate consideration and enjoined the intertransfers until further order. The defendants filed an emergency application for leave to appeal in the Supreme Court, which, in lieu of granting leave, directed the Court of Appeals to expedite its consideration of the case and to enter a further order with respect to the question whether a stay of proceedings or other injunctive relief is appropriate. The Court of Appeals, complying with the directive of the Supreme Court, issued an order stating that the

o    REFERENCES

Am Jur 2d, Public Funds §§ 5, 37, 38, 46; States, Territories, and Dependencies § 115.
See the Index to Annotations under Budgets and Budgetary Matters; Public Moneys; Transfers.

plaintiffs had standing and that they were entitled to preliminary injunctive relief.

On further consideration, the Court of Appeals *held:*

The plaintiffs had standing to sue, and the Legislature has impliedly repealed the statutory authority of the State Administrative Board to make intertransfers of funds.

1. The plaintiffs established their standing by showing that, as legislators, they are detrimentally affected by the subject matter of this action in a manner different than the citizenry at large. The plaintiffs have argued that the power of the State Administrative Board to intertransfer funds was impliedly repealed by a provision of the Management and Budget Act, 1984 PA 431, MCL 18.1101 *et seq.*; MSA 3.516(101) *et seq.*, under which such intertransfers may only by accomplished by action of the State Budget Director subject to review by the House and Senate Appropriations Committees, some of whose members, including plaintiffs Jacobetti and Holmes, are selected with input by plaintiffs Dodak and Miller. The plaintiffs also have argued that if the State Administrative Board does possess the power to unilaterally intertransfer funds between line-item appropriations, then the statute authorizing such action is unconstitutional because it delegates legislative power to the executive branch without any standards circumscribing that power, and because it conflicts with the prerogative of the Legislature pursuant to the constitution to pass line-item budgets and to override the Governor's line-item vetoes.

2. Authority granted under the State Administrative Board Act, 1921 PA 2, § 3, MCL 17.3; MSA 3.263, for intertransfers by the State Administrative Board has been impliedly repealed by the enactment of the Management and Budget Act, which repealed certain sections of the State Administrative Board Act and now governs the budget process. Section 393 of the Management and Budget Act, MCL 18.393; MSA 3.516(393), vests the State Budget Director with exclusive authority to intertransfer funds upon consultation with the House and Senate Appropriations Committees. Thus, while § 3 of the State Administrative Board Act was not explicitly repealed by the Legislature, it has been impliedly repealed to the extent that it conflicts with § 393 of the Management and Budget Act.

3. The plaintiffs' constitutional claims need not be addressed in light of the resolution of their statutory claim.

Reversed.

STATE — STATE ADMINISTRATIVE BOARD — INTERTRANSFER OF FUNDS — STATE BUDGET DIRECTOR.

The State Administrative Board, which is comprised of the Gover-

nor, the Lieutenant Governor, the Secretary of State, the Attorney General, the Superintendent of Public Instruction, and the State Treasurer, no longer has the authority to transfer funds appropriated by the Legislature from one purpose or program within a department of state government to another purpose or program within that department; that authority now lies with the State Budget Director, who must consult the Senate and House Appropriations Committees before making such transfers (MCL 17.3, 18.393; MSA 3.263, 3.516[393]).

*A. Michael Leffler, Jeremy M. Firestone, Mark Matus, Robert P. Reichel,* and *Sally J. Churchill,* Assistant Attorneys General, for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Thomas L. Casey,* Assistant Solicitor General, and *Thomas C. Nelson* and *Deborah Anne Devine,* Assistant Attorneys General, for the defendants.

Amici Curiae:

*Judy H. Hughes,* Senate Majority Counsel, for Dick Posthumus, Philip Arthurhultz, and Harry Gast.

*Goodman, Eden, Millender, Bedrosian* (by *William H. Goodman*); *Legal Services of Southeastern Michigan* (by *Deborah A. Johnson* and *Robert F. Gillett*); and *University of Michigan Clinical Law Program* (by *Paul D. Reingold, Nicholas J. Rine, Julie Kunce Field,* and *Mark D. Mitshkun*), for League of Women Voters of Michigan, Michigan Trial Lawyers Association, Michigan League for Human Services, Women Lawyers Association of Michigan, and Sandra Grimm.

Before: HOOD, P.J., and SULLIVAN and REILLY, JJ.

PER CURIAM. Plaintiffs appeal as of right from a

May 23, 1991, order of the Ingham Circuit Court, which granted defendants' motion for summary disposition and dismissed the complaint, finding that plaintiffs do not have standing to sue and that their statutory and constitutional claims are without merit. We reverse the circuit court's rulings regarding plaintiffs' standing and their statutory arguments, but express no opinion regarding plaintiffs' constitutional claims.

I

The State Administrative Board, which consists of the Governor, the Lieutenant Governor, the Secretary of State, the Attorney General, the Superintendent of Public Instruction, and the State Treasurer, held a special meeting on May 9, 1991. At that meeting, the board adopted eleven resolutions authorizing intertransfers of funds, i.e., transfers of funds within various departments of state government from one purpose or program to another. The resolutions directed that such funds be spent for purposes other than those for which they were originally appropriated by the Legislature. The board approved transfers totalling $212,300 in the Department of Natural Resources, $210,000 in the Department of State Police, $892,800 in the Department of Treasury, $75,000 in the Department of Licensing and Regulation, $19,105,200 in the Department of Mental Health, $15,717,000 in the Department of Corrections, $280,000 in the Department of Education, $1,199,400 in many departments in connection with unclassified positions, $9,668,700 in the Department of Social Services to cover projected deficits in line items by means of projected surpluses in other line items, $94,208,300 in the Department of Social Services to cover projected deficits in Aid to Families with

Dependent Children (AFDC), Supplemental Security Income (SSI), and Medicaid with surpluses in other line items, and $63,300,000 in the Department of Social Services by eliminating General Assistance and transferring the funds to Medicaid and SSI.

On May 10, 1991, plaintiffs filed a complaint in the Ingham Circuit Court, challenging the May 9 actions of the State Administrative Board on the grounds that they exceeded the board's statutory authority and violated the state constitution. The complaint sought injunctive relief restraining implementation of the allegedly illegal transfers and a declaratory judgment that the board lacked legal authority to make such transfers. On the same day, counsel for the parties stipulated to the entry of a preliminary injunction restraining implementation of the transfers until May 30, 1991. The circuit court granted an injunction, which by its terms expired on May 24, 1991.

The parties filed cross motions for summary disposition, which were heard by the circuit court on May 20. On May 23, the circuit court granted defendants' motion for summary disposition, finding that plaintiffs, as individual legislators, lacked standing to bring this action, and that their statutory and constitutional challenges to the authority of the board were without merit.

Plaintiffs filed a claim of appeal on May 23, and at the same time filed motions for a stay of proceedings and immediate consideration, arguing that the circuit court had erred on the merits, and that they and the public interest would be irreparably harmed if the resolutions were allowed to take effect. After reviewing defendants' answer, this Court on May 24 issued an order granting the motion for immediate consideration and enjoining the transfer of funds pursuant to the board resolutions until further order. This Court also ordered

plaintiffs to file a copy of the transcript of the oral arguments in circuit court and a brief on the merits within seven days, and ordered defendants to respond seven days thereafter.

Defendants filed an emergency application for leave to appeal in the Supreme Court. On May 30, 1991, in lieu of granting leave to appeal, the Supreme Court directed this Court to expedite its consideration of this case and to enter no later than June 6, 1991, a further order on the question whether a stay of proceedings or other injunctive relief is appropriate. Accordingly, on June 6, this Court found that plaintiffs had standing as legislators to bring this action, and that they were entitled to preliminary injunctive relief under the test set out in *Michigan State Employees Ass'n v Dep't of Mental Health*, 421 Mich 152, 157-158; 365 NW2d 93 (1984).

Upon further consideration of the parties' briefs[1] and after hearing oral argument on June 20, this Court reiterates that plaintiffs have standing and holds that the State Administrative Board is without authority to intertransfer funds within departments of state government.

II

The requirement of standing ensures that only those who have a substantial interest in a dispute will be allowed to come into court to complain. *Highland Recreation Defense Foundation v Natu-*

[1] We have also had the benefit of four amicus briefs, which we found instructive. Support for plaintiffs' positions was expressed by Democratic members of the House and Senate Appropriations Committees, as well as the League of Women Voters of Michigan, the Michigan Trial Lawyers Association, the Michigan League for Human Services, the Women Lawyers Association of Michigan, and Sandra Grimm. Support for defendants' positions was expressed by three Republican members of the House and three Republican members of the Senate.

*ral Resources Comm,* 180 Mich App 324, 328; 446 NW2d 895 (1989). Plaintiffs must also show that they will be detrimentally affected by the subject matter of the litigation in a manner different than the citizenry at large. *Muskegon Building & Construction Trades v Muskegon Area Intermediate School Dist,* 130 Mich App 420, 423-424; 343 NW2d 579 (1983).

Plaintiffs argue that the State Administrative Board's former power to intertransfer funds was impliedly repealed by a provision of the Management and Budget Act, MCL 18.1101 *et seq.*; MSA 3.516(101) *et seq.*, under which such intertransfers may only be accomplished by action of the State Budget Director subject to review by the House and Senate Appropriations Committees (see part III below). Plaintiffs Jacobetti and Holmes are the Chairman of the House Appropriations Committee and Vice-Chairman of the Senate Appropriations Committee, respectively. Plaintiffs Dodak and Miller, as the Speaker of the House and the Minority Leader of the Senate, respectively, are instrumental in selecting at least some of the members of the two appropriations committees. Plaintiffs clearly appear to have a substantial interest in the resolution of this issue different than that of the average citizen.

Plaintiffs argue in the alternative that if the State Administrative Board does possess the power to unilaterally intertransfer funds between line-item appropriations within a department of state government, then the statute authorizing such action is unconstitutional because it delegates legislative power to the executive branch without any standards circumscribing that power, and because it conflicts with the Legislature's prerogatives under the 1963 constitution to pass line-item budgets and to override the Governor's line-item vetos.

Once again, plaintiffs have clearly asserted substantial interests as legislators different in kind from that of the citizenry at large.

For these reasons, we conclude that plaintiffs have standing to bring the instant action.

Defendants argue that the opposite conclusion is mandated by the decision in *Killeen v Wayne Co Rd Comm,* 137 Mich App 178; 357 NW2d 851 (1984). In *Killeen,* an action was brought by members of the Wayne County Board of Commissioners and the Wayne County Charter Commission, as well as by Senator Hertel in his capacity as a taxpayer residing in Wayne County. The complaint recited that on November 3, 1981, Wayne County voters adopted a new home rule charter, effective January 1, 1983, which created a road commission department to exercise all powers and duties provided by law. On January 7, 1982, the then-existing Board of County Road Commissioners approved a six-year agreement with the Association of Road Commission Administrators, a newly formed labor organization consisting principally of executive, managerial, and supervisory personnel of the Wayne County Road Commission. The plaintiffs sought superintending control and a judgment declaring the agreement null and void as contrary to law and public policy, arguing that recognition of the bargaining unit was a flagrant attempt to circumvent the newly established charter and to insulate certain personnel from action by the newly elected Wayne County Executive. After the circuit court dismissed the complaint on the ground that the plaintiffs lacked standing to sue either as taxpayers or as public officials, the plaintiffs moved for a rehearing and for leave to file an amended complaint to add parties and cure the standing defect. The proposed amended complaint added an allegation that Senator Hertel was a

member of the Michigan State Senate and had been duly authorized on behalf of that body to bring the action. The proposed amended complaint also added eight additional members of the charter commission, and alleged that the charter commission was a duly constituted public body created by statute and that it had joined the action to challenge the agreement for the reasons stated. The circuit court once again found that the plaintiffs did not have standing.

On appeal, Senator Hertel and two commission members argued that they had standing as public officials because the contract complained of nullified their legislative voting power, basing their arguments on a line of federal cases. This Court disagreed.

> To satisfy standing requirements in federal court, a party must demonstrate: (1) that he has personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that the injury is likely to be redressed by a favorable decision. *Valley Forge Christian College v Americans United for Separation of Church & State,* 454 US 464, 474; 102 S Ct 752; 70 L Ed 2d 700 (1982). The *Coleman* [v *Miller,* 307 US 433; 59 S Ct 972; 82 L Ed 1385; 122 ALR 695 (1939)] line of cases demonstrates that the first requirement above may be met where a legislator alleges that his vote has been nullified, *Kennedy* [v *Sampson,* 167 US App DC 192; 511 F2d 430 (1974)], or his influence as a legislator diminished, *Riegle* [v *Federal Open Market Committee,* 211 US App DC 284; 656 F2d 873 (1981), cert den 454 US 1082 (1981)]. In our case, however, the respective votes of Senator Hertel and charter commissioners Ward and Barnes have been counted, and their legislative work-product enacted; at this juncture their special interest as lawmakers has ceased. See *American Federation*

*of Government Employees v Pierce,* 225 US App DC 61; 697 F2d 303 (1982) (member of the House of Representatives lacked standing to sue over allegedly improper execution of an enacted law), *Metcalf v National Petroleum Council,* 407 F Supp 257 (D DC, 1976), *aff'd* 180 US App DC 31; 553 F2d 176 (1977) (legislator denied standing to contest actions which he claimed impaired the effectiveness of legislation for which he voted and on which his vote was duly counted). As the court of a sister state has observed, after reviewing federal authority, once "votes which [lawmakers] are entitled to make have been cast and duly counted, their interest as legislators ceases." *Wilt v Beal,* 26 Pa Commw 298; 363 A2d 876 (1976). We conclude that none of our plaintiffs have standing on the grounds that their power as legislators was diminished. [137 Mich App 188-189.]

We note initially, as we did in *Killeen, supra,* p 188, that we are not bound by federal analysis of standing. We also agree with plaintiffs that the instant case is distinguishable from *Killeen.* If plaintiffs' substantive arguments are correct, then their votes in favor of a line-item budget, and their opportunity to override any line-item veto, have been nullified by actions of the State Administrative Board that exceed its statutory powers or that are unconstitutional. In addition, plaintiffs Jacobetti and Holmes allege that they have been deprived of their right to review intertransfers of funds as required by the Management and Budget Act, which plaintiffs claim impliedly repealed any power the board may have had to unilaterally intertransfer funds. We therefore conclude that plaintiffs have standing as legislators under federal law. *Kennedy, supra,* pp 195-196; *Barnes v Kline,* 245 US App DC 1; 5-6; 759 F2d 21 (1985).

Finally, defendants argue that we should adopt the federal rule of "equitable discretion," to the

effect that "where a congressional plaintiff could obtain substantial relief from his fellow legislators through the enactment, repeal, or amendment of a statute, the court should exercise its equitable discretion to dismiss the legislator's action." *Dornan v United States Secretary of Defense,* 271 US App DC 195, 196; 851 F2d 450 (1988). We find it unnecessary to decide this issue, however, because even if available, the doctrine of equitable discretion would not mandate dismissing plaintiffs' complaint. No enactment, repeal, or amendment of the statute that defendants claim gives the State Administrative Board power to make intertransfers would provide plaintiffs any relief from the transfers already ordered.[2] In addition, enactment of new appropriation bills by the Legislature would not constitute substantial relief, inasmuch as any such enactments are unlikely, given the present economic climate, and nothing would prevent the board from once again intertransferring funds from the line items contained in the supplemental appropriation to line items of the board's own choosing.

III

The State Administrative Board was established by 1921 PA 2, MCL 17.1 *et seq.*; MSA 3.261 *et seq.* Section 3 of the act, MCL 17.3; MSA 3.263, provides:

> The state administrative board shall exercise general supervisory control over the functions and activities of all administrative departments,

---

[2] We note that a budget agreement was reached between the Governor and legislative leaders, which resulted in the board rescinding ten of the eleven resolutions. One resolution was not rescinded, apparently for the specific purpose of allowing this test case to continue.

boards, commissioners and officers of the state, and of all state institutions: Provided, however, The said board shall not have power to transfer any appropriation to the general fund at any time or use the same for any purpose other than that designated by the legislature: Provided further, That said board shall not have power to allow to any state department, board, commission, officer or institution any funds, not appropriated therefor by the legislature, from any source whatever, except as provided in the emergency appropriation act of 1931; *and said administrative board shall not have the power to transfer to any state department, board, commission, officer or institution any sum from the amount appropriated by the legislature for any other purpose, except to inter-transfer funds within the appropriation for the particular department, board, commission, officer or institution.* Said board may in its discretion intervene in any matter touching such functions and activities and may, by resolution or order, advise or direct the department, board, commission, officer or institution concerned as to the manner in which the function or other activity shall be performed, and may order an interchange or transfer of employees between departments, boards, commissions and state institutions when necessary. It is hereby made the duty of each and every official and employee connected with any administrative department, office or institution of the state to follow the direction or order so given; and to perform such services in the carrying out of the purposes and intent of this act as may be required by the board. Failure so to do shall be deemed to constitute malfeasance in office and shall be sufficient cause for removal. [Emphasis supplied.]

Defendants rely on the emphasized language above to support their authority to make the transfers embodied in the May 9, 1991, resolutions. Plaintiffs disagree for the following reasons. The Management and Budget Act, 1984 PA 431, MCL

18.1101 *et seq.*; MSA 3.516(101) *et seq.*, substantially rewrote and recodified the budgeting process in this state. Pursuant to § 145(4) of the act, the State Administrative Board was transferred to the Department of Management and Budget. In three sections, the act provides mechanisms for adjusting mismatched appropriations and expenditures, none of which involve the State Administrative Board. Section 371 applies when appropriations for a particular program are insufficient to provide the level of service enacted by the Legislature. Section 391 applies when actual revenues for a fiscal period fall below the revenue estimates on which appropriations are based. Finally § 393 applies when problems may be solved by shifting appropriations within a department. Plaintiffs claim that intertransfers of funds are now governed exclusively by § 393, MCL 18.393; MSA 3.516(393), which provides in part:

(1) Administrative tranfers of appropriations within any department to adjust for current cost and price variations from the enacted budget items, or to adjust amounts between federal sources of financing, may be made by the state budget director not less than 30 days after notifying the senate and house appropriations committees. Administrative transfers shall not include adjustments that have policy implications or that have the effect of creating, expanding, or reducing programs within that department. Those transfers may be disapproved by either appropriations committee within the 30 days and, if disapproved within that time, shall not be effective.

(2) A transfer of appropriations within any department for reasons other than cost and price variances from those appropriations as enacted into law shall not be made by the state budget director unless approved by both appropriations committees. If the budget director does not ap-

prove tranfers adopted by both appropriations committees under this subsection, the budget director shall notify the appropriations committees of his or her action within 15 days.

Plaintiffs admit that although § 591 of the Management and Budget Act specifically repealed many previous enactments, including portions of the State Administrative Board Act, it did not explicitly repeal the language in § 3 of the State Administrative Board Act, on which defendants rely. Nevertheless, plaintiffs argue that the language was repealed by implication. Plaintiffs claim that it would make no sense for the Legislature to require notice and approval of administrative transfers, as set forth in § 393(1) and (2) of the Management and Budget Act, if the Legislature also allowed the State Administrative Board to have unfettered discretion to make such transfers without notice or approval. Arguing that the Management and Budget Act was meant to occupy the whole field of budgeting and appropriating funds, plaintiffs claim that the Legislature's failure to delete the clause in § 3 relied upon by defendants should be construed as an oversight, and not as a continued intention to allow the State Administrative Board to make intertransfers free of any legislative oversight.

Defendants respond that repeal by implication is disfavored at law, especially when the two statutes can be harmonized. Here, defendants argue that the statutes should be construed as limiting the authority of the State Budget Director to intertransfer funds without notice or approval, pursuant to § 393 of the Management and Budget Act, while granting unfettered discretion to the board to intertransfer funds pursuant to § 3 of the State Administrative Board Act.

Although repeals by implication are disfavored, an implicit legislative intent to repeal may be found in appropriate cases, especially when a later statute covers an entire field and conflicts with a more narrow, earlier statute. *Jackson v Corrections Comm,* 313 Mich 352, 356-358; 21 NW2d 159 (1946); *Lafayette Transfer & Storage Co v Public Utilities Comm,* 287 Mich 488, 492-493; 283 NW 659 (1939). We find that the Legislature intended the Management and Budget Act to occupy the whole field of the budget process, and in particular intended § 393 to provide the exclusive means of transferring appropriations within any department. We find the "inter-transfer" language of § 3 of the State Administrative Board Act to be inconsistent with the Management and Budget Act, and conclude that the Legislature intended to repeal it.

We find further support for our conclusion in the fact that § 591 of the Management and Budget Act explicitly repealed § 6 of the State Administrative Board Act, MCL 17.6; MSA 3.265, which had provided:

(1) The state administrative board shall not allow a state department, board, commission, officer or institution to have any funds, not appropriated therefor by the legislature, from any source whatever, except as provided in Act No. 120 of the Public Acts of 1937, as amended, being sections 5.1 to 5.5 of the Michigan Compiled Laws. The state administrative board shall not transfer to any state department, board, commission, officer or institution any sum from the amount appropriated by the legislature for any other purpose, except to intertransfer funds within the appropriation for the particular department, board, commission, officer, or institution.

(2) Intertransfers of appropriations for any particular department or institution, shall not be made which will increase or decrease an item of

appropriation by more than 3% or $30,000.00 whichever is greater, and in no case shall any item of appropriation be increased or decreased by more than $50,000.00 in the aggregate. Such transfers shall only be made for purposes of the payment of employee longevity, insurance or retirement payments, and a transfer shall not be made into any salary and wage account. Transfers made under this section shall be reported by the budget director within 30 days to the senate and house appropriations committees with copies to the senate and house fiscal agencies.

(3) Intertransfers of appropriations for any particular department or institution in excess of the restrictions in subsection (2) may be made by the state administrative board only after approval by the house and senate appropriations committees.

(4) The board may also engage suitable and necessary architectural service for the state, and for state, and public educational institutions and may appoint or employ 1 or more competent architects or superintendents of construction for the supervision of the construction and repair of state buildings and other state works. The compensation of any architect or superintendent so appointed or employed shall be fixed by the board.

(5) Nothing in this act shall be construed to give the state administrative board control over the system of state accounting and the manner of handling the work, which shall be the function of the department of management and budget.

If defendants are right, the repeal of § 6 removed the limitations contained in subsections 2 and 3 and thus increased the intertransfer authority of the board. We find it unlikely that the Legislature meant to remove all limitations on the board's power to intertransfer funds while simultaneously subjecting intertransfers proposed by the State Budget Director to review by the appropriations committees.

We note that subsections 6(2) and (3) of the State

Administrative Board Act were added by 1976 PA 120. Those restrictions on the power of the board to intertransfer funds are clearly repugnant to the unrestricted authorization to intertransfer funds contained in § 3 and relied upon by defendants. We therefore hold in the alternative that the "inter-transfer" language in § 3 was impliedly repealed by 1976 PA 120. Therefore, the explicit repeal of § 6 of the State Administrative Board Act by § 591 of the Management and Budget Act explicitly eliminated all of the board's intertransfer authority.

IV

Plaintiffs argue that, if the State Administrative Board has the power defendants claim, this Court should find the grant of authority contained in § 3 to be unconstitutional because it amounts to a delegation of legislative power to the executive branch without any standards circumscribing that power. Plaintiffs further claim that any such grant of authority would violate state constitutional provisions which give the Legislature the power to approve a line-item budget and to override the Governor's line-item veto.

Because of our disposition of plaintiffs' statutory claim, we find it unnecessary to reach their constitutional claims.

Reversed.