SAXON v DEPARTMENT OF SOCIAL SERVICES

Docket No. 145252. Submitted November 4, 1991, at Detroit. Decided November 8, 1991, at 9:00 A.M. Leave to appeal denied, 439 Mich 880.

Cheryl Saxon and others whose benefits under the General Assistance program or the Job Start program were terminated by the Department of Social Services upon the elimination of those programs and the inception of the State Disability Assistance program on October 1, 1991, brought an action in the Ingham Circuit Court against the DSS, seeking an injunction to reinstate benefits. The court, James R. Giddings, J., found that the DSS had failed to give adequate notice to former General Assistance recipients of the need to demonstrate disability in order to continue receiving benefits under the State Disability Assistance program, and issued a preliminary injunction directing the DSS to reinstate benefits retroactive to October 1, 1991, for all persons on the General Assistance or the Job Start rolls on September 30, 1991. The injunction also directed the DSS to establish procedures for identifying persons qualified for the State Disability Assistance program, under which benefits are limited to indigents who are disabled. The DSS appealed by leave granted.

The Court of Appeals *held:*

Because the plaintiffs are not likely to prevail on the merits of their claim that the elimination of the General Assistance and Job Start programs was undertaken in violation of their due process rights to adequate notice as secured by Const 1963, art 1, § 17 or in violation of 1979 AC, R 400.902(3), a preliminary injunction should not have been issued.

1. The trial court erred in determining that the State Disability Assistance program was a mere continuation of that part of General Assistance that provided benefits to the disabled. On the basis of this erroneous determination, the trial court incorrectly concluded that there had been inadequate notice of a change in an existing entitlement program in violation of the constitutional guarantee of due process. However, it is clear that the State Disability Assistance program is different from and is not a continuation of a part of General Assistance. Even if the State Disability Assistance program were a continuation

of part of General Assistance, the various notices sent by the DSS to those enrolled in General Assistance constituted adequate prior notice of the change.

2. The elimination of General Assistance and Job Start, while it effected a substantive change in entitlement programs, did not violate Const 1963, art 4, § 24 or § 25, the title-object and the amendment-republication clauses of the constitution. Because General Assistance and Job Start were not implemented by statutory mandate, but existed by virtue of annual appropriations, their termination did not give rise to any violation of Const 1963, art 4, § 24 or § 25.

3. The DSS did not violate 1979 AC, R 400.902(3) in terminating General Assistance and Job Start. Notices sent by the DSS on September 20, 1991, to those enrolled in the programs satisfied the requirements of Rule 902(3) by stating the intended action, the reason for the action, the specific change in law requiring the action, and the circumstances under which a hearing could be obtained.

Reversed and remanded.

*Michigan Legal Services* (by *Marilyn T. Mullane, Kathleen A. Gmeiner,* and *Susan K. McParland*), *Legal Aid of Western Michigan* (by *Michael O. Nelson*), *Legal Services of Southeastern Michigan* (by *Robert F. Gillett*), and *Barnhart & Mirer, P.C.* (by *Michael Barnhart*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Erica Weiss Marsden, Stephen H. Garrard, Susan A. Harris,* and *Robert S. Welliver,* Assistant Attorneys General, for the defendant.

Amici Curiae:

*Zick & Swegles, P.C.* (by *Cynthia Bostwick*), for Michigan Up and Out of Poverty Campaign, Hunger Action Coalition, Capuchin Community Center, and Center for Human Resources.

*Desiree Cooper,* for New Detroit, Inc.

*Mark H. Magidson,* for Inter-Faith Hospitality Ministries, Cass Community United Methodist Church, and Homeless Drop-In Center.

*Lawrence O. Wells,* for Michigan League for Human Services.

*Suzanne Sattler,* for Most Holy Trinity Catholic Church and Sacred Heart Catholic Church.

*David Shaltz,* for Michigan Housing Coalition.

*James J. Sheehan,* for Detroit Catholic Pastoral Alliance and Thomas Gumbleton, Auxiliary Bishop, Archdiocese of Detroit.

*Sachs, Nunn, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Theodore Sachs*), for Michigan State AFL-CIO.

*Jordan Rosen* and *Richard W. McHugh,* for International Union, UAW.

*Goodman, Eden, Millender & Bedrosian* (by *Diane M. Kwitoski*), for Alliance for the Mentally Ill of Michigan, Area Agency on Aging Association of Michigan, Detroit Base Coalition for Human Rights of the Handicapped, Michigan Protection and Advocacy, Michigan Organization of Social Security Claimants' Representatives, and National Association for the Advancement of Colored People, Detroit Chapter.

Before: BRENNAN, P.J., GILLIS and HOOD, JJ.

GILLIS, J. Defendant appeals by leave granted from a preliminary injunction entered by the Ingham Circuit Court on October 11, 1991. The injunction requires defendant to reinstate all persons who were General Assistance (GA) and Job

Start (JS) recipients on September 30, 1991, and to take all necessary steps to immediately issue benefit checks retroactive to October 1, 1991. The injunction also requires the defendant to establish procedures to specifically identify those who do and do not qualify for State Disability Assistance (SDA).

Because plaintiffs have failed to show any likelihood of success on the merits, we reverse.

I

The State Administrative Board, which consists of the Governor, the Lieutenant Governor, the Secretary of State, the Attorney General, the Superintendent of Public Instruction, and the State Treasurer, held a special meeting on May 9, 1991. The board adopted eleven resolutions transferring funds from one purpose or program to another within various departments of state government. One effect of those transfers was to eliminate GA and fund SDA, which affords benefits only to those who are disabled.

Defendant subsequently sent notices to GA recipients informing them that benefits would end on May 31, 1991. The notice also stated that a new program called SDA would automatically continue to provide benefits to certain individuals and might provide benefits to other disabled individuals. However, the transfers effected by the State Administrative Board were stayed by order of this Court on May 24, 1991, and GA was not eliminated.[1] Defendant sent GA recipients notice with their June 1 checks that program elimination had

---

[1] This Court ultimately found that the actions of the State Administrative Board exceeded its statutory authority and were void. *House Speaker v State Administrative Bd,* 190 Mich App 260; 475 NW2d 440 (1991).

been blocked by legal action, but that, depending on court action, GA might end as soon as June 15, 1991. Once again, GA recipients were notified that they might be eligible for SDA benefits.

When the Governor and the Legislature finally reached a budget agreement, one provision called for a twelve percent reduction in GA benefits effective August 1, 1991. Disabled GA recipients were to be exempt from the reduction. This exemption was accomplished by providing "supplemental assistance" to disabled GA recipients. Defendant automatically granted the supplement to those whose disabilities had been established previously and gave notice on July 15, 1991, to all GA recipients of the existence of the supplemental benefit. Subsequent notices of the supplement were provided, including one with the GA checks on September 1, 1991.

In late September 1991, the Legislature and the Governor reached a budget agreement for fiscal year 1991-92. The agreement called for the elimination of GA, but the precise nature of any replacement program was not yet clear. On September 20, 1991, defendant sent all GA recipients the following notice:

> Beginning October 1, 1991, you will no longer receive any General Assistance (GA) or Job Start (JS) payments. Funding for Job Start and General Assistance for employable persons has been eliminated.
> An administrative hearing to contest this action will not be granted as this action is required by law.

This notice made no reference to any replacement for GA and, in particular, made no mention of SDA.

On October 2, 1991, plaintiffs filed an amended complaint challenging the termination of their GA

benefits.[2] Although the circuit court refused plaintiffs' request for a temporary restraining order, it scheduled the matter for an immediate hearing on October 3. In a lengthy opinion dated October 11, 1991, the circuit court found that plaintiffs had satisfied all of the requirements mandated by *Michigan State Employees Ass'n v Dep't of Mental Health,* 421 Mich 152, 157-158; 365 NW2d 93 (1984), for a preliminary injunction. The circuit court found that plaintiffs would suffer irreparable injury if a preliminary injunction were not granted, plaintiffs had demonstrated a strong likelihood of success on the merits, the relative harm to plaintiffs if the injunction were not granted outweighed any harm to defendant if the injunction were granted, and granting the preliminary injunction would be in the public interest.

In finding that plaintiffs had shown a substantial likelihood of success on the merits, the circuit court reasoned as follows:

> In order to determine whether Plaintiffs have met their burden, the Court will address two questions presented by the facts. The first is whether the GA disability program as it existed up to September 30, 1991, was ended by legislative enactment. The Attorney General strenuously argues that it did end and that the supplemental disability assistance program established in Enrolled SB 227 is an entirely new program. The Attorney General argues with equal vigor that those persons who were GA recipients before October 1, 1991 secure no rights in the new SDA program merely because they might have been eligible under the prior GA disability program.
>
> The foundation of the Attorney General's position is that the legislature was free to terminate

---

[2] Plaintiffs' initial complaint was filed in May 1991 and sought injunctive relief restraining defendant from refusing to treat water bills as a covered service under the Emergency Needs Program.

the old program and that the fact of termination ended any and all rights recipients may have had. Defendants rely on a 1985 decision of the United States Supreme Court in *Atkins v Parker,* 472 US 115; 105 S Ct 2520; 86 L Ed 2d 81 (1985). *Atkins* involved a legislatively mandated reduction in food stamp benefits. Among other things, the United States Supreme Court in *Atkins* concluded that

"[t]he procedural component of the Due Process Clause does not 'impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits.' " 472 US 129.

Defendants' reliance is misplaced.

While the legislature does indeed have the right to terminate an entitlement program unencumbered by constitutional due process constraints, to offer that conclusion in this context only begs the question. The Attorney General presents as fact that which has yet to be established—that the legislature did indeed terminate the old program and institute a new one. To the contrary, the evidence presented compels the conclusion that the legislature did not create a new program at all. It appears that the legislature simply continued the GA disability program under a new designation.

The circuit court concluded that SDA was not a new program on the basis of the fact that the eligibility requirements for disabled GA recipients were the same as those for the allegedly new SDA program. The circuit court also found that defendant and its agents treated the programs as though they were the same. The circuit court noted various exhibits indicating that coding would not change for disabled GA recipients who become eligible under SDA, and using language regarding "reinstatement" of benefits for former GA recipients who demonstrate disability. The circuit court concluded that "if it walks like a GA

disability program and quacks like a GA disability program—it must be a GA disability program."

Because the circuit court found that the SDA program is nothing more than a continuation of at least a part of the old GA program, i.e., the part that provided benefits to disabled individuals, it found that defendant had failed to give adequate notice to former GA recipients of the need to demonstrate disability in order to continue receiving benefits. The court found the series of notices given to GA recipients beginning in May to have been confusing and inadequate, noting that the September 20 notice that GA was being discontinued did not mention the availability of SDA.

Determining that the notice was inadequate to protect plaintiffs' property right in their entitlement to benefits, the circuit court found that defendant violated the Due Process Clause of Const 1963, art 1, § 17. In addition, the court found that defendant violated 1979 AC, R 400.902, which provides in part:

> (3) When the changes in either state or federal law require automatic grant adjustments for classes of recipients, timely notice of the grant adjustments shall be given which is adequate if it includes a statement of the intended action, the reasons for the intended action, a statement of the specific change in law requiring the action, and a statement of the circumstances under which a hearing may be obtained and assistance continued.

Although defendant claimed that this rule does not require a hearing when an entirely new program supersedes an old program, the circuit court responded that it had already concluded that SDA was nothing more than a continuation of a portion of the GA program.

Because the circuit court was convinced that the

only way to avoid irreparable harm to plaintiffs was to reinstate the entire GA program as it existed before October 1, 1991, the preliminary injunction issued on October 11 required defendant to reinstate the GA program and begin processing checks retroactive to October 1, 1991, unless and until defendant can show that it has established an adequate system of notifying and screening GA recipients who are eligible for SDA.

Defendant filed an emergency application for leave to appeal with this Court, as well as motions for immediate consideration and to stay the circuit court's ruling. On October 14, this Court granted defendant's motion for a stay. On October 16, this Court granted the application and set an accelerated schedule for briefing. Upon review of those briefs[3] and after hearing oral argument on November 4, 1991, this Court holds that plaintiffs have failed to show any likelihood of success on the merits.

II

The circuit court found that defendant violated plaintiffs' due process rights as guaranteed by the Michigan Constitution. Const 1963, art 1, § 17 provides:

> No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed.

---

[3] We also have had the benefit of amicus briefs from individuals and organizations too numerous to mention.

Although plaintiffs assert that the due process guarantee of the Michigan Constitution is broader than that of the United States Constitution, they cite no authority or legislative history in support of this assertion. Instead, plaintiffs note that other provisions of the Michigan Constitution have been read more broadly than their federal counterparts. Plaintiffs urge this Court to do likewise with the due process clause of the state constitution.

We decline plaintiffs' invitation. Plaintiffs offer no persuasive reason for construing the due process clause of the state constitution differently than the due process clause of the federal constitution,[4] nor do they suggest any principles for analyzing claims under a broadly construed state due process clause. Because we find due process analysis under federal precedent to be sufficient for this case, we see no reason to sail off into uncharted waters.

III

The circuit court found that SDA was nothing more than a continuation of that portion of the former GA program that targeted benefits to disabled individuals. For this reason, the circuit court held that defendant's failure to give adequate prior notice of the change in programs deprived disabled GA recipients of their property interest in continuing benefits without due process of law. We disagree for a number of reasons.

Defendant is empowered by § 14(1)(a) and (b) of

---

[4] Plaintiffs argue that state due process rights are more extensive than federal ones because the state due process guarantee is included in a provision of the constitution that also guarantees to all persons "fair and just treatment." Plaintiffs do not, however, explain why this additional guarantee of fair treatment "in the course of legislative and executive investigations and hearings" should apply to public welfare programs.

the Social Welfare Act, MCL 400.14(1)(a) and (b); MSA 16.414(1)(a) and (b), to allocate and distribute monies as appropriated by the Legislature for relief or welfare services. The GA program was not established by the Social Welfare Act or any other statute. Instead, the GA program existed by virtue of yearly appropriations. Until defendant promulgated an emergency rule to provide supplemental benefits to disabled GA recipients in order to effectuate a budget agreement exempting disabled GA recipients from the twelve percent cut in benefits for August and September 1991, disability was irrelevant to an individual's eligibility for GA benefits.

On September 27 or 28, 1991, the Legislature approved an appropriations bill for defendant that allocates no monies for GA but rather allocates funds for SDA and sets eligibility criteria for participation in the program. Although these criteria are very similar to, if not precisely the same as, the criteria used to determine eligibility for supplemental benefits in August and September 1991, this does not warrant the conclusion that SDA is nothing more than a continuation of a portion of the GA program. Rather, we believe that SDA is a new program targeting benefits only to those who are disabled, whereas GA made no distinction between the disabled and the able-bodied. The fact that a policy decision was made to provide disabled GA recipients with supplemental benefits does not require a different conclusion. That policy decision was consistent with the aim of concentrating scarce resources on the disabled, which presumably underlies the replacement of GA by SDA.[5]

---

[5] We are also unconvinced that SDA must be treated as a continuation program because defendant does not require SDA applicants to fill out an entirely new application form if they have previously received GA benefits. Defendant's efforts to minimize paperwork, delay, and

Plaintiffs argue that if the appropriations for fiscal year 1991-92 effected a substantive change in welfare benefits, the legislative action was an unconstitutional repeal of a statute in an appropriations bill, in violation of the title-object and amendment-republication clauses of Const 1963, art 4, §§ 24 and 25. However, as noted above, there is no statutory basis for the GA program. Instead, both GA and SDA exist by virtue of yearly appropriations. Although the Legislature may not repeal statutes in an appropriations act, it may prohibit or limit expenditures of appropriated funds within an appropriations act. *Colombini v Dep't of Social Services,* 93 Mich App 157, 162-163; 286 NW2d 77 (1979). Because the replacement of GA by SDA did not require the repeal of a statute, plaintiffs have failed to show any constitutional violation.

Even if SDA is not an entirely new program, but is instead considered a continuation of a portion of the former GA program, plaintiffs have failed to show that they were denied any notice to which they were entitled. At issue in *Atkins v Parker,* 472 US 115; 105 S Ct 2520; 86 L Ed 2d 81 (1985), was an amendment of the Food Stamp Act reducing the portion of recipients' income that would be disregarded in calculating their eligibility for benefits. Although the recipients received some sort of notice, they claimed they were entitled to more. The Supreme Court disagreed for the following reasons:

> Food-stamp benefits, like the welfare benefits at issue in *Goldberg v Kelly,* 397 US 254, 25 L Ed 2d 287, 90 S Ct 1011 (1970), "are a matter of statutory entitlement for persons qualified to receive them."

---

inconvenience for all concerned should not be held to constitute an admission that the two programs are the same. We find similarly unpersuasive plaintiffs' argument that the two programs are the same because defendant does not code cases or materials differently.

*Id.,* at 262, 25 L Ed 2d 287, 90 S Ct 1011 (footnote omitted). Such entitlements are appropriately treated as a form of "property" protected by the Due Process Clause; accordingly, the procedures that are employed in determining whether an individual may continue to participate in the statutory program must comply with the commands of the Constitution. Id., at 262-263, 25 L Ed 2d 287, 90 S Ct 1011.

This case, however, does not concern the procedural fairness of individual eligibility determinations. Rather, it involves a legislatively mandated substantive change in the scope of the entire program. Such a change must, of course, comply with the substantive limitations on the power of Congress, but there is no suggestion in this case that the amendment at issue violated any such constraint. Thus, it must be assumed that Congress had plenary power to define the scope and the duration of the entitlement to food-stamp benefits, and to increase, to decrease, or to terminate those benefits based on its appraisal of the relative importance of the recipients' needs and the resources available to fund the program. The procedural component of the Due Process Clause does not "impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits." *Richardson v Belcher,* 404 US 78, 81, 30 L Ed 2d 231, 92 S Ct 254 (1971). [*Atkins, supra* at 128-129.]

The reasoning in *Atkins* does not suggest that any distinction may be drawn between substantive changes in an ongoing program and substantive changes accomplished by eliminating an old program and substituting a new program. The labeling should not matter. If so, then even if the circuit court correctly found that SDA was a continuation of a portion of the GA program, the court erred in holding that plaintiffs' due process right to notice was violated. Plaintiffs are entitled to no

greater notice of the legislative change in welfare law than other citizens. *Atkins, supra* at 130.

Finally, we hold that the notice plaintiffs did receive was constitutionally adequate. By mid-September it was clear that GA would not be funded for the new fiscal year beginning October 1. It was not clear, however, whether SDA or some other program would replace GA in part. Because defendant's own rules required it to give GA recipients ten days prior notice, it sent notice on September 20 that the GA program would end on October 1. Although plaintiffs claim that the notice was inadequate because it failed to mention potential eligibility for SDA, we find that under the circumstances of this case defendant was not required to give notice of potential eligibility for a program that was not yet definite.[6] Moreover, all GA recipients had been on notice since May that there might be a successor program to GA targeting benefits to disabled individuals. Indeed, GA recipients who were disabled had a financial incentive since mid-July to prove disability in order to escape the twelve percent cut in GA benefits for August and September. Those individuals who did qualify for this supplemental assistance were automatically carried over to the SDA program.

For these reasons, we conclude that the circuit court erred in finding a due process violation. Even if we had reached a different conclusion, we would be troubled by the remedy ordered by the circuit court. We know of no authority in support of the proposition that defendant is constitutionally required to continue paying GA benefits to an individual unless and until it is satisfied that the individual does not qualify for any successor pro-

---

[6] Although both houses of the Legislature agreed on appropriations for defendant on September 27 or 28, 1991, the bill was not signed into law by the Governor until October 11.

gram. If the due process violation consisted of failure to give adequate notice, this was arguably cured on October 10, 1991, when defendant notified former GA recipients of their potential eligibility for SDA benefits retroactive to October 1, 1991, as long as they applied for such benefits no later than November 27, 1991.

## IV

In the alternative, the circuit court found that defendant violated 1979 AC, R 400.902(3). We disagree. The September 20 notice fully satisfied Rule 902(3). It contains a statement of the intended action, the reason for the action, a statement that funding for the program has been eliminated, and a statement of the circumstances under which a hearing could be obtained, i.e., none.[7]

Plaintiffs clearly believe that defendant has an obligation to establish that GA recipients are not disabled and not eligible for SDA benefits before terminating their GA benefits. Because we find no constitutional, statutory, or other basis for shifting the burden from GA recipients to establish their own entitlement to benefits, we reverse the order granting a preliminary injunction and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

Reversed and remanded.

---

[7] No hearing is allowed under these circumstances by virtue of 1979 AC, R 400.903(3), which provides:

A hearing shall not be granted when either state or federal law requires automatic grant adjustments for classes of recipients, unless the reason for an individual appeal is incorrect grant computation.