# STATE OF MICHIGAN

# COURT OF APPEALS

SALLY STEELE-BROWN,

      Petitioner-Appellee,

v

PUBLIC SCHOOL EMPLOYEES RETIREMENT
SYSTEM,

      Respondent-Appellant.

UNPUBLISHED
November 29, 2016

No. 328351
Ingham Circuit Court
LC No. 15-000146-AE

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and GLEICHER, JJ.

PER CURIAM.

Respondent appeals by leave granted[1] the circuit court's decision reversing a determination by the Public School Employees' Retirement Board (the Board) that denied petitioner's request to revoke her election of retirement healthcare benefits. We reverse and remand.

## I. FACTUAL AND LEGAL BACKGROUND

Petitioner retired from teaching in 2013, after 31 years of service. In attempting to sort out her post-retirement healthcare, petitioner realized that she made "a terrifying mistake" in 2012, when she elected to change her retirement health care plan to a portable healthcare fund in response to changes to legislation surrounding public school employee retirement benefits.

Our Supreme Court has concisely summarized the history of the legislation involved:

> Facing a budget shortfall in the state public school system in 2010, the Legislature enacted Public Act 75, which modified retirement benefits for current public school employees. The statute supplemented and altered the Public School Employees Retirement Act (Retirement Act), MCL 38.1301 *et seq.*, which governs the Michigan Public School Employees' Retirement System (MPSERS).

---

[1] *Steele-Brown v Pub Sch Employees Retirement Sys*, unpublished order of the Court of Appeals, entered October 7, 2015 (Docket No. 328351).

-1-

The most controversial provision of 2010 PA 75 was MCL 38.1343e, which required all current public school employees to contribute 3% of their salaries to the MPSERS to assist in funding retiree healthcare benefits for current and future public school retirees. Before the enactment of 2010 PA 75, public school employees had never been required to pay for these benefits. MCL 38.1343e directed school districts to withhold and remit this 3% amount to the state for deposit into a trust account from which current retirees' healthcare benefits would be paid. [*AFT Mich v Michigan*, 497 Mich 197, 201-202; 866 NW2d 782 (2015).]

In 2012, the Legislature further modified the Retirement Act by adding new provisions regarding pensions and retiree healthcare. 2012 PA 300. Specifically, MCL 38.1391a(5) now enables current public school employees to elect to opt out of retiree healthcare under section 91[2] to avoid paying the 3% retiree healthcare contribution. Employees who opt out may instead opt into a Tier 2 account, under which the employee maintains his or her own "portable healthcare fund," with the employer matching the employee's contributions of up to 2% of the employee's compensation. MCL 38.1391a(1).

An employee who opts into the Tier 2 plan does not receive the premium subsidy he or she would have under section 91. MCL 38.1391(15)(b). The statutes required employees to elect their healthcare benefits before January 9, 2013. MCL 38.1391a(5).

In early September 2012, petitioner received a letter from the Office of Retirement Services (ORS) advising her of the upcoming statutory changes and stating that she would need to make her elections before the deadline. Petitioner attended seminars and meetings regarding retirement elections and met with a financial advisor, but the focus of the meetings was on making the best choice regarding the retirement system, not the healthcare elections. Petitioner testified that she did not understand the ramifications of the healthcare election choices, did not understand what "premium subsidy benefit" meant, and believed she was making a decision about her flexible spending account. Because of her misunderstanding, petitioner believed the Tier 2 plan provided a "better benefit" for her and her husband, and she selected the Tier 2 plan when she made her online selections for health benefits during the election period. ORS sent petitioner a letter confirming her election, but petitioner testified that she did not receive it because she was in the process of moving.

Petitioner decided to retire on July 1, 2013. Petitioner did not realize that, in accordance with the election she had made, she was ineligible for the employer-provided premium subsidy and had been shifted to the Tier 2 plan as of February 1, 2013. In July 19, 2013, after petitioner's retirement paperwork was processed, she received a letter from ORS that summarized her retirement benefits. With the short length of time between her change to a Tier 2 and her retirement, petitioner's personal health care fund accrued only about $1,000. Petitioner

---

[2] Section 91 of the Public School Employees Retirement Act, MCL 38.1301 *et seq*. ("Retirement Act") requires respondent to pay 80% of a retiree's healthcare insurance premiums for employees who retire after January 1, 2013. MCL 39.1391. The Office of Retirement Services called this option the "premium subsidy."

testified that it was at this point that she realized for the first time that her election of the personal healthcare fund meant that, in her retirement, she and her husband were without employer-provided health insurance.

Petitioner attempted to rectify her mistake. After ORS advised petitioner that it could not make any changes to petitioner's election, petitioner requested an administrative hearing. Following the hearing, the magistrate issued a nine-page proposal for decision, which concluded that the relevant statutes did not permit petitioner to change her healthcare election. The magistrate recognized that there was no dispute that the information and websites that ORS provided during the election period were "very confusing," but found that "Petitioner made her election during [the statutory] window, either on October 23, 2012 or in early January 2013" and "did not attempt to revoke her election during this window." Because MCL 38.1391(1) mandates that a person who made the election under subsection (5) "shall not" receive health insurance coverage from the retirement system, the magistrate concluded that this "simply does not provide the Retirement System with any discretion to change Petitioner's election after the statutory window closed." The decision further concluded that the tribunal could not use equity to rewrite the statute. The Board adopted the magistrate's decision in November 2014.

Following the Board's decision, petitioner filed a claim of appeal in the Ingham Circuit Court, asserting that the decision contained errors of law. Specifically, petitioner argued that respondent acted without authorization when it forced petitioner to choose between the premium subsidy and portable healthcare fund because the statute authorized respondent only to provide employees the *option* to opt out of their traditional retiree health insurance coverage in favor of Tier 2 account provision. She asserted that respondent's use of jargon created unnecessary confusion and that petitioner did not make an "election" because she did not knowingly and voluntarily choose to give up her retiree health insurance. Accordingly, petitioner sought equitable relief.

The trial court ruled from the bench, stating:

> When one looks at the transcript in its entirety, it is very clear petitioner/appellant was confused, did not make an informed decision as she should be allowed to do in regard to her retirement, and, right or wrong, the administrative law judge made a decision on this record and said, well, ma'am, you're stuck with this, essentially is the outcome.
>
> This court finds that that decision of the administrative law judge was not based on competent, substantial, material evidence. That the evidence is, in fact, the opposite. That although the petitioner was given resources, she was clearly confused based on this record, and that this record speaks, despite all the resources that the state did give her, to the fact that she hit the wrong button. With all that information, there was an oversight and the [magistrate], despite the information in this record, ruled the wrong way.

Accordingly, the court ordered respondent to reinstate petitioner's retiree healthcare benefits subsidy. Respondent now appeals.

## II. STANDARD OF REVIEW

We review a lower court's review of an administrative decision to determine "whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial evidence test to the agency's factual findings, which is essentially a clearly erroneous standard of review." *VanZandt v State Employees' Retirement Sys*, 266 Mich App 579, 585; 701 NW2d 214 (2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to accept a decision, and it may be less than a preponderance of the evidence. *Id*. at 584 "[T]he circuit court may not substitute its judgment for that of the agency, even if the court might have reached a different result." *Id*.

We review de novo the proper interpretation and application of statutes. *Bandeen v Pub Sch Employees Retirement Bd*, 282 Mich App 509, 515; 766 NW2d 10, 14 (2009). When doing so, we give undefined terms their plain meanings and may consult a dictionary definition for the meaning of such terms. *Id*. at 517. An agency's interpretation of a statute is entitled to respectful consideration and courts should not overturn such interpretations unless they conflict with the plain meaning of the statute. *In re Rovas Complaint*, 482 Mich 90, 117-118; 754 NW2d 259 (2008).

## III. ANALYSIS

We agree with respondent that the circuit court misapplied the substantial evidence test in this case. Petitioner testified that she did select the personal healthcare fund option during the elections period, though she did so mistakenly. Her testimony provided more than a scintilla of evidence that she did, in fact, opt out of the premium subsidy option by opting into the Tier 2 personal healthcare fund option. The Board's decision recognized that petitioner misunderstood the consequences of her choice but concluded that the statute did not allow it to grant petitioner an equitable remedy. Petitioner's error was not in checking a box she did not mean to check, but in failing to educate herself regarding the practical effects of her selection.

An analogous situation arose in the context of worker's compensation, when the enacting legislation, 1912 PA 10, was still new. At that time, if an employer chose to be subject to the act, each of its employees would also be subject to the act unless he or she had given " 'notice in writing that he elects not to be subject to the provisions of this act.' " *Mackin v Detroit-Timkin Axle Co*, 187 Mich 8, 15-16; 153 NW 49 (1915), quoting 1912 PA 10, part 1, § 8. The injured-worker plaintiff in *Mackin* claimed in part that the act was unconstitutional, he received no actual notice of the act, was unable to elect not to be subject to its provisions, and "there can be no waiver of constitutional rights without knowledge of the facts upon which it is based." *Id*. at 12, 15. The Michigan Supreme Court disagreed, concluding that "[t]he employee is not required to act without inquiry as to the fact of insurance by the employer. He has only to ask for information. That is nothing more than is required in most of the affairs of life in order that one may act intelligently." *Id*. at 17 (quotation marks and citation omitted).

2012 PA 300 does not include an express notice provision. But individuals are not entitled to notice of new laws unless the enacting statute specifically requires notification. *Saxon v Dep't of Social Servs*, 191 Mich App 689, 701-702; 479 NW2d 361 (1991). In this case, the efforts of the ORS to educate employees is analogous to the exercise of free will discussed in

*Mackin*—petitioner was not required to act without knowledge, and the responsibility was on her to make an informed choice.

We reject petitioner's insistence that the word "elect" requires a knowing and intelligent selection. While dictionary definitions point toward a preference for an informed choice, they do not *require* understanding: "**2.** To pick out; select: *elect an art course*. **3.** To decide, especially by preference: *elected to take the summer off*," *American Heritage Dictionary of the English Language* (5th ed); "opt for or choose to do something," *New Oxford American Dictionary* (3d ed); "to choose; select *[*we *elected* to stay]*," *Webster's New World College Dictionary* (5th ed); "**2 :** to make a selection of <will ~ an academic program> **3 :** to choose (as a course of action) esp. by preference <might ~ to sell the business>," *Merriam-Webster's Collegiate Dictionary* (11th ed).

To elect a course of action without an understanding of the consequences does not make the choice less of a choice. *Mackin* indicates that even a failure to act can be treated as making a choice; under that view, petitioner's active selection of the wrong box would certainly be evidence of her electing it, no matter how much she regretted it later. Accordingly, the Board's decision was not contrary to the plain statutory language.

Because the Board's decision was based on substantial evidence and not contrary to the law, the circuit court should have affirmed that decision rather than substituting its own judgement.

We reverse and remand for the circuit court to reinstate the Board's decision. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher