CITY OF DETROIT v DEPARTMENT OF SOCIAL SERVICES

Docket No. 157986. Submitted November 12, 1992, at Detroit. Decided
    November 19, 1992, at 9:10 A.M. Leave to appeal denied, 441
    Mich 901.

The City of Detroit and others brought an action in the Ingham
    Circuit Court against the Department of Social Services and
    others, challenging the validity of emergency administrative
    rules promulgated by the department to implement the State
    Emergency Relief program, which provides relief or welfare
    services to poor persons on a more restrictive basis than what
    had been provided under the Emergency Needs Program. The
    department had administered the Emergency Needs Program
    pursuant to yearly appropriations by the Legislature and ad-
    ministrative rules adopted and codified at 1979 AC, R 400.3501
    et seq. In making its appropriation for the department for fiscal
    year 1991-92, 1991 PA 111, the Legislature did not make a line
    item appropriation for the Emergency Needs Program, but did
    make a block grant to counties for assistance to indigents for
    emergency needs and medical care. The department promul-
    gated an emergency administrative rule that rescinded the
    administrative rules for the Emergency Needs Program. The
    Legislature then enacted 1991 PA 139, which rescinded the
    block grant and appropriated monies for the Emergency Needs
    Program. The department promulgated additional emergency
    administrative rules creating the State Emergency Relief pro-
    gram to disburse the funds appropriated under 1991 PA 139 for
    the Emergency Needs Program. In making its appropriations
    for the department, for fiscal year 1992-93, 1992 PA 168, the
    Legislature made a specific appropriation for the State Emer-
    gency Relief program.

The court, James R. Giddings, J., granted summary disposi-
    tion for the plaintiffs, ruling that the emergency administrative
    rules for the State Emergency Relief program were invalid
    because no real emergency had justified their promulgation.
    The court invalidated the rescission of the rules for the Emer-
    gency Needs Program and ordered the department to adminis-
    ter emergency assistance pursuant to those rules. The depart-
    ment thereafter promulgated another set of emergency admin-
    istrative rules for the State Emergency Relief program. Follow-
    ing a hearing, the court invalidated those rules, found the

department in contempt, and ordered the department to pay the plaintiffs' costs and attorney fees and to adhere to the rules for the Emergency Needs Program in disbursing funds for emergency assistance, including those appropriated for 1992-93. The Court of Appeals granted the department leave to appeal, immediate consideration, and a stay of proceedings in circuit court.

The Court of Appeals *held*:

1. The circuit court erred in ordering the department to use the rules for the Emergency Needs Program in disbursing funds specifically appropriated for the State Emergency Relief program in fiscal year 1992-93. The appropriations bill for those funds was adopted by the Legislature and signed by the Governor at a time when both were aware of the differences between the Emergency Needs Program and the more restrictive State Emergency Relief program. The department must disburse those funds under the State Emergency Relief program, not the Emergency Needs Program.

2. The second set of emergency administrative rules promulgated by the department are valid and remain effective for six months from when they were filed with the Secretary of State pursuant to the Administrative Procedures Act, MCL 24.248; MSA 3.560(148).

3. The circuit court erred in finding the department in contempt inasmuch as it did not preclude the department from further attempts at promulgating administrative rules for the State Emergency Relief program, and the department would have violated Const 1963, art 9, § 27, had it used monies appropriated for the State Emergency Relief program to comply with the circuit court's order not to terminate the Emergency Needs Program.

Reversed.

*Cooper, Fink & Zausmer, P.C.* (by *David H. Fink, Brent S. Triest,* and *Ruben Acosta*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Stephen H. Garrard* and *Susan A. Harris,* Assistant Attorneys General, for the defendants.

Before: CONNOR, P.J., and GRIBBS and SULLIVAN, JJ.

PER CURIAM. Defendant Department of Social Services appeals by leave granted from two orders of the Ingham Circuit Court. By order dated September 29, 1992, the court denied defendant's motion for declaratory relief and modification or dissolution of an injunction entered by the court on July 27, 1992. By order dated October 30, 1992, the court found invalid certain emergency rules promulgated by defendant, ordered defendant to use previous rules that defendant at one time had rescinded, found defendant in contempt of previous orders, and ordered defendant to pay the costs and attorney fees incurred by plaintiffs in commencing and prosecuting this action. We reverse.

I

For many years defendant has provided emergency assistance to eligible persons pursuant to the Emergency Needs Program (ENP). Although the Social Welfare Act, MCL 400.1 et seq.; MSA 16.401 et seq., contains no language requiring defendant to operate the ENP, § 14 of the act, MCL 400.14; MSA 16.414, directs defendant to allocate and distribute monies as appropriated by the Legislature for relief or welfare services. Pursuant to this general authorization and yearly appropriations by the Legislature, defendant promulgated rules in 1979 establishing and governing the ENP, 1979 AC, R 400.3501 et seq.

On October 11, 1991, the Legislature passed 1991 PA 111, appropriating funds for defendant for fiscal year 1991-92. The bill did not contain a line item appropriation for the ENP. Instead, it contained a line item entitled "County emergency and medical care block grant." Section 815 of 1991 PA 111 authorized block grants to counties "for the purpose of assisting poor persons to meet

emergency needs and providing medical care to recipients of state disability assistance, indigents, or uninsured persons." However, on November 21, 1991, the Legislature passed a supplemental appropriations bill, 1991 PA 139, deleting the entire amount previously appropriated for county block grants, repealing § 815 of 1991 PA 111, and appropriating $38.9 million for the ENP. The bill was signed by the Governor and filed with the Secretary of State on November 22, 1991.

On November 22, 1991, defendant filed with the Secretary of State an emergency rule under § 48 of the Administrative Procedures Act (APA), MCL 24.248; MSA 3.560(148), which rescinded the existing ENP rules. Section 43(1) of the APA, MCL 24.243(1); MSA 3.560(143)(1), provides that a rule is not valid unless processed in compliance with provisions of the APA requiring that the agency give notice of a public hearing at which interested persons shall be given an opportunity to present data, views, questions, and arguments regarding the proposed rule. In addition, § 45 of the APA, MCL 24.245; MSA 3.560(145), provides that proposed rules shall not take effect unless approved by the joint committee on administrative rules in the Legislature or by a concurrent resolution of the Legislature. However, § 48 provides an exception for emergency rules:

(1) If an agency finds that preservation of the public health, safety, or welfare requires promulgation of an emergency rule without following the notice and participation procedures required by sections 41 and 42 and states in the rule the agency's reasons for that finding, and the governor concurs in the finding of emergency, the agency may dispense with all or part of the procedures and file in the office of the secretary of state the copies prescribed by section 46 indorsed as an

emergency rule, to 3 of which copies shall be attached the certificates prescribed by section 45 and the governor's certificate concurring in the finding of emergency. The emergency rule is effective on filing and remains in effect until a date fixed in the rule or 6 months after the date of its filing, whichever is earlier. The rule may be extended once for not more than 6 months by the filing of a governor's certificate of the need for the extension with the office of the secretary of state before expiration of the emergency rule. An emergency rule shall not be numbered and shall not be compiled in the Michigan administrative code, but shall be noted in the annual supplement to the code. The emergency rule shall be published in the Michigan register pursuant to section 8.

(2) If the agency desires to promulgate an identical or similar rule with an effectiveness beyond the final effective date of an emergency rule, the agency shall comply with the procedures prescribed by this act for the processing of a rule which is not an emergency rule. The rule shall be published in the Michigan register and in the code.

(3) The legislature by a concurrent resolution may rescind an emergency rule promulgated pursuant to this section. [MCL 24.248; MSA 3.560(148).]

Defendant apparently based the claim of emergency on the fact that the Legislature had failed to appropriate any funds for the ENP for fiscal year 1991-92. The Governor approved the emergency rescission of the ENP rules on November 22, 1991. Later that same day the Governor signed 1991 PA 139, the supplemental appropriation for defendant, which included funds for the ENP.

On December 2, 1991, defendant filed additional emergency rules under § 48 of the APA implementing a program entitled State Emergency Relief (SER), similar to but more restrictive than the ENP. The basis for this alleged emergency was the need

for rules to administer the line item appropriation for emergency benefits in 1991 PA 139, in light of defendant's emergency rescission of the ENP rules in November.

On or about December 17, 1991, the House of Representatives voted to rescind the emergency rules pursuant to § 48(3). Because the Senate did not concur, the SER emergency rules remained in effect.

Plaintiffs filed suit, challenging the validity of the emergency rules in March 1992. Plaintiffs moved for summary disposition, arguing that there was no genuine issue of material fact regarding the lack of any true emergency in November and December 1991 justifying the promulgation of emergency rules. At a hearing held on July 27, 1992, the circuit court agreed with plaintiffs and granted summary disposition. By order on the same date, the court held that the November rescission of the ENP rules was invalid, the December SER emergency rules were invalid, and the ENP rules remained valid. The court ordered defendant to process requests for emergency assistance pursuant to the ENP rules. Defendant did not appeal from this order.

Meanwhile, 1992 PA 168, a bill appropriating funds for defendant for fiscal year 1992-93, was signed by the Governor and filed with the Secretary of State on July 20, 1992. The act contains a line item appropriation of $37 million for SER. The bill was passed and signed while the SER emergency rules were in effect and before the circuit court's order holding them invalid.

On September 21, 1992, defendant filed a motion for declaratory relief and modification or dissolution of the court's July 27, 1992, injunction. Defendant argued that the Legislature had failed to provide any appropriation for the ENP for the new

fiscal year. Defendant contended that the line item appropriation in 1992 PA 168 for SER demonstrated the Legislature's intent to fund the more restrictive program embodied in the emergency rules previously held invalid by the circuit court.

At a hearing held on September 29, 1992, the court denied the motion. The court found that nothing significant had happened since July 27 to justify modifying the court's order. Moreover, the court held that defendant's argument was without merit. The court stated that the mere use of a different term in a line item appropriation was insufficient evidence of legislative intent to justify the conclusion that the Legislature indorsed defendant's change from the ENP to the SER program. The court also stated that the Legislature could not have meant to create a new program without any statutory or regulatory apparatus in place.[1] The court went on to state:

> The real question, it seems to me, and I'm not going to answer that because I don't [have] it here today, is whether the Department may now go ahead and promulgate some emergency rules taking into account what they projected to be the needs to operate this program as they understand it should be operated. The fiscal realities of the Department in the State of Michigan and how they can best fulfill their general statutory obligation in light of those economic realities. And again there is nothing that prevents them from declaring an emergency and the promulgation of rules that would operate the program consistent with what they perceive to be those needs. Are they valid, I do not know. That remains to be seen. They may well be. They may not be. It may well be the City of Detroit will come in here and

---

[1] It appears that the court did not appreciate the fact that the SER emergency rules were in effect at the time the Legislature passed and the Governor signed the 1992-93 appropriations bill.

challenge those rules. But, it seems to me if the Legislature intended that this program should be operated pursuant to standards.

\* \* \*

I think the Legislature did intend that the program should operate pursuant to the existing rules until such time as some appropriate and lawful other rules were put into effect under which the program could operate. And, my injunction does not in any way prevent the Department from establishing such rules and implementing them, unless there is some judicial challenge.

So, I guess I'll put this interpretation on the next to the last paragraph in that [July 27] order that says further order that the defendant is hereby restrained from wrongfully denying emergency assistance to plaintiffs pursuant to Emergency Needs Program rules, so on and so forth. That does not prevent the Department from either attempting to promulgate new rules or emergency rules. And, once those rules are put into effect and they're not enjoined or whatever, I presume that this program designated, at least according to the State as the State Emergency Relief, would be operated in accordance with those rules. But, the Department is required to follow appropriate procedures under the APA, and if they do that no problem. But, in terms of amending it, I deny the request, as I say, subject to that last comment. The order should not be construed as barring the Department from either adopting rules, I guess I'll call them regular rules or emergency rules. The validity of such rules remains to be seen.

On October 13, 1992, defendant filed new emergency rules implementing SER. The new rules were very similar to the previous rules. The new emergency rules contained a detailed statement of findings regarding an emergency: defendant noted the 1992-93 appropriation for SER, the rules for which have been struck down by the circuit court; defendant stated that SER could not be operated without

administrative rules and could not be operated using the ENP rules because the ENP and SER are different programs; defendant justified the emergency rules for the "preservation of the public welfare and the lawful operation of the state emergency relief program" until such time as permanent administrative rules can be promulgated.

Plaintiff filed a motion requesting that the circuit court enforce the July 27, 1992, order and hold defendant in contempt. At a hearing held on October 29, 1992, the court once again found that there was no justification for promulgating emergency rules, and that the rules were nothing more than a sophisticated attempt to avoid complying with the July 27, 1992, order. The court struck down the emergency rules, ordered defendant to immediately begin processing applications for emergency assistance benefits and to pay those benefits in accordance with the ENP rules, found defendant in civil contempt, warned defendant that any further violation of the court's orders would be punished, and ordered defendant forthwith to pay plaintiffs' costs and attorney fees incurred in commencing and prosecuting the lawsuit, including all costs and attorney fees incurred in seeking enforcement of the court's orders. An order to this effect was entered on October 30, 1992.

On the same day, defendant filed with this Court an emergency application for leave to appeal the October 30, 1992, order, a delayed application for leave to appeal the September 29, 1992, order, as well as motions for immediate consideration and for a stay. This Court granted the motion for immediate consideration, granted the applications for leave to appeal, and stayed the effect of the circuit court's orders until further notice. The

parties were ordered to file briefs no later than November 10, 1992, and oral argument was heard on November 12, 1992.

## II

Defendant did not appeal from the circuit court's July 27, 1992, order, nor has defendant sought review of the order by delayed application. Instead, defendant argues that even if the circuit court properly struck down the November and December 1991 emergency rules,[2] the court erred on September 29, 1992, when it denied defendant's motion to dissolve or modify the July order, or to declare that the order did not require use of the ENP rules for fiscal year 1992-93.

In *Saxon v Dep't of Social Services,* 191 Mich App 689, 699, 700; 479 NW2d 361 (1991), this Court noted that the Social Welfare Act did not establish either the General Assistance program or its successor, the State Disability Assistance program. Rather, the programs existed only by virtue of yearly appropriations by the Legislature (and administrative rules to implement the programs, although this was not at issue in *Saxon*). Similarly, defendant argues in this case that the Social Welfare Act establishes neither the ENP nor SER. Instead, the Social Welfare Act grants defendant broad discretion in the manner in which it carries out its duties under the act, subject to limitations imposed by the Legislature's line item appropriations and Const 1963, art 9, § 17, which provides:

No money shall be paid out of the state treasury

---

[2] Although no challenge to the July 27, 1992, order is properly before us, we note our agreement with the circuit court. We, too, are troubled by the apparently manufactured nature of the "emergency" used to justify rescission of the ENP rules in November 1991 and promulgation without notice or comment of SER emergency rules in December 1991.

except in pursuance of appropriations made by law.

Because the appropriation for the present fiscal year contains no line item for the ENP, but rather a line item for the SER program, defendant argues that it may not pay monies out of the state treasury for benefits or services under the ENP. Instead, defendant must implement the program that received an appropriation for this fiscal year, the SER program.

Plaintiffs respond that *Saxon* is distinguishable. In *Saxon,* this Court held:

On September 27 or 28, 1991, the Legislature approved an appropriations bill for defendant that allocates no monies for GA but rather allocates funds for SDA and sets eligibility criteria for participation in the program. [191 Mich App 699.]

Because in the present case the Legislature set no eligibility criteria for participation in SER in the 1992-93 appropriations bill, plaintiffs contend that the inference is unwarranted that the Legislature meant to fund a new program. Instead, plaintiffs contend that the Legislature intended to fund the usual emergency assistance program, whatever it might be called.

We find that defendant has the better argument. Although the appropriation for the present fiscal year does not contain any language establishing eligibility criteria for the new program, last year's appropriation for the ENP likewise contained no eligibility criteria, and it appears that no previous appropriation spelled out the nature of the ENP. Rather, as counsel for defendant put it at oral argument, the rules tend to drive the appropriations, i.e., the Legislature generally funds a pro-

gram established by rules promulgated by defendant.[3]

When the Legislature passed and the Governor signed the bill appropriating funds for the SER program for the present fiscal year, defendant's December 1991 emergency SER rules were still in effect. We presume that the Legislature understood the nature of the program that it was funding, and that it also understood that the program differed from the preceding program. Indeed, plaintiffs conceded at oral argument that the initial executive budget for defendant for fiscal year 1992-1993 contained a line item for SER, that the House changed the line item from SER to the ENP, but that the final legislative product that became 1992 PA 168 contains a line item for SER only. We find that this sequence of events supports defendant's contention that the Legislature and the Governor intended to fund the SER program and not the ENP.

Plaintiffs argue that the Legislature's choice of words in funding a generic emergency assistance program should count for little. We disagree. Absent evidence to the contrary, the courts must presume that the Legislature means what it says. Moreover, accepting plaintiffs' argument would raise constitutional concerns. If the Legislature's choice of words in a line item counts for as little as plaintiffs suggest, then the Governor could never be certain of the nature of the program funded by a line item appropriation and so could not meaningfully exercise the Governor's constitutional power to veto that line item.

For these reasons, we hold that the circuit court

---

[3] Legislative oversight is not completely absent, however. Permanent rules must be promulgated pursuant to the APA, including review by the joint committee on administrative rules under § 45 of the APA, MCL 24.245; MSA 3.560(145).

erred in ordering defendant to use the ENP rules in fiscal year 1992-93.

Plaintiffs make an additional argument to the effect that even if defendant has validly promulgated SER emergency rules, those rules must expire shortly. Section 48 of the APA provides that emergency rules may remain in effect for no more than six months, but may be extended for an additional period not to exceed six months. Plaintiffs' argue that because SER emergency rules were initially promulgated on December 2, 1991, and were extended in May 1992, and because the October 13, 1992, SER rules are nearly identical to the rules promulgated in December 1991, no further extensions of the emergency rules may be granted and the present SER rules will shortly expire.

Defendant responds by noting that the circuit court struck down the earlier SER rules on July 27, 1992, and that defendant did not appeal from that order. Defendant argues that the latest version of the SER rules, promulgated on October 13, 1992, represents the first properly promulgated emergency rules for a program explicitly authorized by the Legislature.

Although this issue was raised below, it was treated almost as an afterthought and was not decided by the circuit court. This Court generally declines to consider such an issue, unless the issue is one of law and the record is factually sufficient, or unless failure to consider the issue would result in manifest injustice. *Trail Clinic, PC v Bloch,* 114 Mich App 700, 711; 319 NW2d 638 (1982). Although this Court would have benefited from more detailed briefing on this issue and from a ruling by the circuit court, we believe that the public interest would not be served if this issue were left unresolved. We therefore hold that defendant promulgated valid SER emergency rules for the first

time on October 13, 1992, and that the time limit for emergency rules began to run on that date.

III

Although we have held that the circuit court erred, the general rule is that a party may be guilty of contempt for violating even an erroneous court order. Nevertheless, we hold that the circuit court erred in finding defendant in contempt for two reasons. First, the circuit court suggested at the September 29, 1992, hearing that defendant could attempt to implement the SER program by promulgating emergency rules. Although the court noted that any such rules would be subject to challenge, and may have meant only that emergency rules might be found necessary because of future economic contingencies, the court's statements were ambiguous and would not have caused a reasonable person to believe that the promulgation of emergency rules would be viewed as contemptuous. Second, a party may not be held in contempt for failing to comply with an order with which the party cannot comply. *Butler v Butler,* 80 Mich App 696, 700; 265 NW2d 17 (1978). Defendant could not utilize funds appropriated by the Legislature for the SER program in fiscal year 1992-93 to fund the ENP, because to do so would violate Const 1963, art 9, § 17.

Reversed.