BPS CLINICAL LABORATORIES v BLUE CROSS AND BLUE
SHIELD OF MICHIGAN

AMERICAN HEALTH RESOURCES, INC v BLUE CROSS AND
BLUE SHIELD OF MICHIGAN

Docket Nos. 145988, 146035, 151162, 151163, 152010, 153383. Submitted March 8, 1994, at Detroit. Decided September 6, 1994, at 9:15 A.M. Leave to appeal sought.

BPS Clinical Laboratories and other independent clinical laboratories and two physicians brought an action in the Wayne Circuit Court against Blue Cross and Blue Shield of Michigan, alleging they wrongfully were denied the opportunity to participate as panel providers in the defendant's new health care program, Premier PLUS, part of a General Motors Corporation self-funded employee benefit plan managed by Blue Cross under an administrative services only contract. The plaintiffs alleged a violation of the Nonprofit Health Care Corporation Reform Act, MCL 500.1101 *et seq.*; MSA 24.660(101) *et seq.*, and tortious interference in business relationships. The plaintiff doctors also alleged breach of contract.

American Health Resources, Inc., brought an action for mandamus in the Wayne Circuit Court against Blue Cross and Blue Shield of Michigan, seeking an order requiring Blue Cross to comply with the Prudent Purchaser Act, MCL 550.51 *et seq.*, MSA 24.650(51) *et seq.*, by allowing it to apply for membership as a panel provider in Premier PLUS. American Health also alleged that Blue Cross violated the Antitrust Reform Act, MCL 445.771 *et seq.*; MSA 28.70(1) *et seq.*

The two cases were consolidated and assigned to Judge Richard C. Kaufman. Blue Cross had the cases removed to the federal

REFERENCES

Am Jur 2d, Injunctions, §§ 308, 310, 311; Insurance, § 18; Pensions and Retirement Funds, §§ 115, 117, 118, 120, 122, 124.

Furnishing of bond as prerequisite to issuance of temporary restraining order. 73 ALR2d 854.

Construction and application of pre-emption exemption, under Employee Retirement Income Security Act (29 USCS § 1001 *et seq.*), for state laws regulating insurance, banking, or securities (29 USCS § 1144 (b) (2)). 87 ALR Fed 797.

district court, alleging that the claims were subject to complete preemption under federal law by the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.* The federal court found that it did not have subject-matter jurisdiction under the ERISA and, while expressly leaving open the question whether the ERISA preempted the plaintiffs' state law claims, remanded the case to the Wayne Circuit Court. The circuit court entered an order on October 9, 1991, granting the defendant's motion for summary disposition, except with regard to the plaintiffs' claim under the Prudent Purchaser Act, which the court found the defendant had violated. The parties each appealed from the part of the order adverse to it. Blue Cross also appealed from an order entered on March 18, 1992, that enjoined operation of Premier PLUS until the defendant filed with the Insurance Commissioner the criteria for participating in the program and reconsidered the plaintiffs' applications to participate, and an order entered on April 9, 1992, that denied defendant's motion for security pending appeal. The appeals were consolidated.

The Court of Appeals *held:*

The order entered on April 9, 1992, and that part of the order entered on October 9, 1991, dismissing all the plaintiffs' claims except the Prudent Purchaser Act claim are affirmed. The order entered on March 18, 1992, is reversed. The part of the order entered on October 9, 1991, finding the defendant in violation of the Prudent Purchaser Act is reversed and amended to reflect a grant of summary disposition for the defendant in light of the defendant's preemption defense under the ERISA.

1. The ERISA provides that a state law that relates to employee benefit plans is preempted by the ERISA. 29 USC 1144(a). However, even if a state law claim relates to the ERISA, it may be exempt from preemption under the savings clause that exempts from preemption state laws that regulate the business of insurance, banking, or securities. 29 USC 1144(b)(2)(A). The savings clause is limited by a deemer clause that provides that states may not treat self-insured ERISA plans as insurers in order to subject them to state insurance regulation. 29 USC 1144(b)(2)(B).

2. The ERISA preemption clause prohibits the plaintiffs' claims because the specific state law provisions that form the basis for those claims relate to a self-funded employee health benefit plan and do not constitute regulation of the business of insurance.

3. The state law provisions that form the basis of the plain-

tiffs' claims do not regulate the business of insurance because Premier PLUS at this point is solely a program for self-funded employee benefit plans. The plaintiffs' claims for breach of contract, tortious interference, and antitrust violations clearly are not based on laws aimed at insurance regulation. The claims under the Prudent Purchaser Act and the Nonprofit Health Care Corporation Reform Act do not constitute efforts to regulate an insurance plan and, therefore, do not invoke the savings clause. 29 USC 1144(b)(2)(A).

4. The fact that Blue Cross, the administrator of the Premier PLUS program, is also an insurance company does not automatically trigger the savings clause. Preemption should not depend on the arbitrary distinction between programs with administrators that happen to engage in the business of insurance and those with administrators that do nothing but manage self-funded benefit plans.

5. The trial court did not err in modifying its October 9, 1991, order by entering an order on December 20, 1991, that enforced the terms of the earlier order and did not err in finding the defendant in violation of the latter order when it issued the March 18, 1992, order.

6. The trial court did not abuse its discretion in denying the defendant's motion for security under MCR 3.310(D)(1).

Affirmed in part and reversed in part.

WHITE, P.J., concurring in part and dissenting in part, stated that the antitrust statute did not apply, that the circuit court did not err in entering its December 20, 1991, and March 18, 1992, orders, that the motion for security pending appeal was properly denied, and that the remaining claims were not preempted by the ERISA.

1. CONFLICT OF LAWS — PREEMPTION — EMPLOYEE BENEFIT PLANS — INSURANCE — EMPLOYEE RETIREMENT INCOME SECURITY ACT.

A state law that relates to employee benefit plans is preempted by the Employee Retirement Income Security Act unless the state law regulates the business of insurance, banking, or securities; states may not treat self-insured ERISA plans as insurers in order to subject them to state insurance regulation; a state law relates to an employee benefit plan and would be preempted by the ERISA if it alters the level of benefits that would be paid out under a given plan from state to state, alters the terms of the plan such as requirements for eligibility, or subjects the fiduciaries of a plan to claims other than those provided in the ERISA itself (29 USC 1001 et seq.).

2. Costs — Damages — Security — Preliminary Injunctions —
   Temporary Restraining Orders — Court Rules.

  The court rule providing that, before granting a preliminary
  injunction or temporary restraining order, a court may require
  the applicant to give security for the payment of costs and
  damages that may be incurred or suffered by a party who is
  found to have been wrongfully enjoined or restrained is limited
  to security for a preliminary injunction or a temporary re-
  straining order only; the rationale for requiring security is not
  applicable where a full hearing on the merits is held before an
  injunction is issued (MCR 3.310[D][1]).

*Feikens, Foster, Vander Male, Bellamy & Gil-
christ, P.C.* (by *Alan G. Gilchrist, Keith J. Soltis,*
and *Gail F. McIntyre*), for BPS Clinical Laborator-
ies and other plaintiffs.

*Frimet & Michalsen, P.C.* (by *Gilbert M. Frimet*
and *John A. Michalsen*), for American Health
Resources, Inc.

*Richard John Mathews* and *Joseph W. Murray,*
for Blue Cross and Blue Shield of Michigan.

Before: White, P.J., and Michael J. Kelly and
W. J. Caprathe,* JJ.

Michael J. Kelly, J. Plaintiffs, independent
clinical laboratories and two physicians, alleged
that they wrongfully were denied the opportunity
to participate as panel providers in defendant's
new health care program, Premier plus. On Octo-
ber 9, 1991, the circuit court granted defendant's
motion for summary disposition with regard to all
issues except plaintiffs' claim under the Prudent
Purchaser Act (ppa), MCL 550.51 *et seq.*; MSA
24.650(51) *et seq.*, which the court found defendant
had violated. The parties each appeal the court's
summary disposition decision adverse to it. Defen-

* Circuit judge, sitting on the Court of Appeals by assignment.

dant also appeals an order of March 18, 1992, enjoining operation of Premier PLUS until defendant filed the criteria for participating in the program with the Insurance Commissioner and reconsidered plaintiffs' applications, and an order of April 9, 1992, denying defendant's motion for security pending appeal. The appeals were consolidated. We affirm the order of April 9, 1992, reverse the order of March 18, 1992, and affirm that part of the October 9, 1991, order dismissing all of plaintiffs' claims except the PPA claim. We reverse the part of the October 9, 1991, order finding defendant in violation of the PPA and order it amended to reflect a grant of summary disposition for defendant in light of defendant's preemption defense under the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.*

I

Defendant is a nonprofit health care corporation. It administers General Motors Corporation's traditional option coverage program under an "administrative services only" contract, which requires General Motors to pay defendant a fee for administering the program and reimburse defendant for all covered health care charges paid by defendant on behalf of program enrollees. Defendant is not an insurer for General Motors' employees. The Premier Prudent Laboratory Use Program (Premier PLUS) is a diagnostic laboratory network pilot program developed, marketed, and implemented by defendant. Employees under General Motors' self-funded, traditional option coverage plan were the first group to enroll in the program when, in 1990 and 1991, the Corporation-Union Committee on Health Care Benefits at General Motors evaluated potential pilot programs for laboratory ser-

vices and approved Premier PLUS. Although defendant developed Premier PLUS in part out of a desire to negotiate contracts with the employee health benefit plans for Ford, Chrysler, AT&T, and Ameritech and planned to use Premier PLUS in its own employee benefit plan, General Motors is apparently the only entity enrolled in the program at this time. The General Motors traditional option coverage program is an "employee benefit plan" for purposes of the ERISA.

Before implementation of the Premier PLUS program, defendant paid all diagnostic laboratories according to a maximum-fee schedule. Health care providers who drew blood and sent the samples to the laboratories for analysis received a $3 blood-handling fee from defendant.

Under the Premier PLUS program, defendant established a panel of six provider laboratories, which agreed to discount the rate charged to defendant for services rendered. Physicians who referred blood specimens to nonpanel laboratories would not receive the $3 blood-handling fee. Nonpanel laboratories themselves would be reimbursed only fifty percent of the maximum payment scheduled. In addition, the new program differentiated between standard and nonstandard laboratory procedures. Physicians who performed nonstandard procedures would be reimbursed fifty percent of the maximum fee scheduled. The range of services eligible for reimbursement under the program, whether in whole or in part, remained the same.

II

Plaintiffs are health care providers excluded from full reimbursement under Premier PLUS. On March 27, 1991, plaintiffs sued defendant, alleging

that Premier PLUS violated the Nonprofit Health Care Corporation Reform Act (Act 350), MCL 550.1101 *et seq.*; MSA 24.660(101) *et seq.*, and resulted in a tortious interference in the established business relationship between plaintiffs and referring physicians. Plaintiff doctors also alleged that Premier PLUS constituted a breach of contract with defendant.

Plaintiff American Health Resources, Inc., filed a complaint for mandamus on April 25, 1991, requesting that defendant be ordered to comply with the PPA by allowing it to apply for membership as a panel provider in Premier PLUS. The complaint also alleged an unlawful attempt to establish a monopoly in violation of the Antitrust Reform Act, MCL 445.771 *et seq.*; MSA 28.70(1) *et seq.* The two cases were consolidated and assigned to the same circuit judge.

Defendant removed the cases to the federal district court, arguing that plaintiffs' claims were subject to complete preemption under federal law by the ERISA. The federal court, on the basis of the face of the complaints, found that it did not have subject-matter jurisdiction under the ERISA and remanded the case to the circuit court on August 7, 1991. It expressly left open the question whether the ERISA preempted plaintiffs' state law claims.

On August 27, 1991, defendant moved for summary disposition. The circuit court granted the motion on October 9, 1991, except with regard to plaintiffs' claim under the PPA, which the court found defendant had violated. With regard to that claim, the court issued a final order requiring defendant to accept applications from plaintiffs for participation in Premier PLUS. In addition, the court permitted plaintiffs to reinstate their claim for money damages if defendant refused to accept

their applications. It also continued a temporary restraining order issued on August 14, 1991, which permitted plaintiffs to be treated as panel providers in Premier PLUS.

On October 31, 1991, defendant rejected all of plaintiffs' applications. On November 13, 1991, the circuit court continued the temporary restraining order with regard to BPS Clinical Laboratories, Michigan Clinical Laboratory, and Universal Standard Medical Laboratories, Inc.

On December 20, 1991, the circuit court found that defendant had continued to violate the PPA and also had violated the October 9, 1991, order. It issued an additional final order requiring defendant to submit its standards for panel membership to the Insurance Bureau within sixty days and added that it would enjoin operation of Premier PLUS if defendant did not comply. The court once again extended the temporary restraining order.

Subsequently, defendant moved for relief from this order and to stay any further proceedings, arguing that the order was void as an improper modification of the October 9, 1991, order and that, nonetheless, it had complied with the December 20, 1991, order. The court denied the motion on March 18, 1992, finding that defendant had not filed its standards with the Insurance Commissioner before reviewing plaintiffs' applications. The court enjoined operation of Premier PLUS until defendant filed its standards and considered plaintiffs' applications in light of those standards.

Defendant moved for security to protect its interests pending appeal. The circuit court denied the motion in an order dated April 9, 1992.

Concurrent with the circuit court proceedings, the Insurance Commissioner also reviewed allegations that defendant had not complied with statutory regulations in implementing Premier PLUS.

Although initially having found that defendant had not violated the law and having noted that the law, as applied to Premier PLUS, was probably preempted under the ERISA, the Insurance Commissioner later issued a notice of opportunity to show compliance, requiring defendant to address claims that it had violated the PPA. On March 19, 1992, the Insurance Commissioner issued a notice of dismissal, finding that defendant had complied with the Insurance Code.

### III

Defendant contends that plaintiffs' claims are preempted under federal law by the ERISA. The circuit court refused to consider defendant's argument regarding this issue, apparently under the misconception that it had been resolved against defendant by the federal district court.[1] By not addressing the issue, the trial court effectively decided it against defendant. The issue has been thoroughly briefed on a complete record and presents a question of law. We believe that the public interest will best be served by resolving it. See *Detroit v Dep't of Social Services,* 197 Mich App 146, 158; 494 NW2d 805 (1992).

Under § 514(a) of the ERISA, a state law that "relates to" employee benefit plans is preempted by the ERISA, 29 USC 1144(a), unless it falls under the "savings clause" of § 514(b)(2)(A), 29 USC 144(b)(2)(A). The phrase "relates to" is broadly defined to preempt state laws that have a connection with or reference to an employee benefit plan, even if the law is not specifically designed to affect such plans or the effect is only indirect. *Ingersoll-*

---

[1] Although the federal district court concluded that "complete preemption" did not apply as a basis for subject-matter jurisdiction, it expressly declined to rule on the separate issue whether the ERISA preempted plaintiffs' state law claims.

*Rand Co v McClendon,* 498 US 133, 138-139; 111 S
Ct 478; 112 L Ed 2d 474 (1990). "It is not the label
placed on a state law claim that determines
whether it is preempted, but whether in essence
such a claim is for the recovery of an ERISA plan
benefit." *Cromwell v Equicor-Equitable HCA Corp,*
944 F2d 1272, 1276 (CA 6, 1991), cert dis — US —;
120 L Ed 2d 931 (1992). If applicable, the ERISA
preempts state common law in addition to statu-
tory law. *Pilot Life Ins Co v Dedeaux,* 481 US 41;
107 S Ct 1549; 95 L Ed 2d 39 (1987).

In *Teper v Park West Galleries, Inc,* 431 Mich
202, 221; 427 NW2d 535 (1988), our Supreme Court
held that a state law "relates to" an employee
benefit plan and would be preempted by the ERISA
if it had the effect of

> (1) altering the level of benefits which would be
> paid out under a given plan from state to state, (2)
> altering the terms of the plan such as require-
> ments for eligibility, or (3) subjecting the fiduciar-
> ies of a plan to claims other than those provided in
> the ERISA itself.

In *United Wire, Metal & Machine Health & Wel-
fare Fund v Morristown Memorial Hosp,* 995 F2d
1179, 1193 (CA 3, 1993), the court held that a state
law may relate to ERISA plans if its effect, even if
indirect, "is to dictate or restrict the choices of
ERISA plans with regard to their benefits, struc-
ture, reporting and administration, or if allowing
states to have such rules would impair the ability
of a plan to function simultaneously in a number
of states."

Even if a state law claim "relates to" the ERISA,
it may nonetheless be exempt from preemption
under the "savings clause" in § 514(b)(2)(A). 29
USC 1144(b)(2)(A). This provision exempts from
preemption state laws that regulate the business

of insurance, banking, or securities. The savings clause is itself limited by the "deemer clause," which provides that states may not treat self-insured ERISA plans as insurers in order to subject them to state insurance regulation. 29 USC 1144(b)(2)(B).

Thus, states may regulate companies that insure ERISA plans, but they may not regulate ERISA plans. *Lincoln Mutual Casualty Co v Lectron Products, Inc,* 970 F2d 206, 210 (CA 6, 1992). A self-funded employee benefit plan is not subject to direct regulation by insurance laws pursuant to the language of the deemer clause. *Auto Club Ins Ass'n v Frederick & Herrud, Inc (After Remand),* 443 Mich 358, 382; 505 NW2d 820 (1993), quoting *FMC Corp v Holliday,* 498 US 52, 61; 111 S Ct 403; 112 L Ed 2d 356 (1990).

In this case, plaintiffs allege that defendant's implementation of Premier PLUS resulted in: (1) a violation of Act 350, because defendant failed to file the plan with the Insurance Commissioner and thereby indicate the criteria for becoming a panel member; (2) a violation of the PPA, because defendant failed to offer plaintiffs an application for participation in Premier PLUS; (3) a violation of the Antitrust Reform Act, because Premier PLUS was designed to exclude competition among independent laboratories and did not fall under the antitrust exception for health maintenance organizations; (4) a breach of contract with referring doctors, because Premier PLUS unilaterally changed the terms of reimbursement for services and blood-handling fees; and (5) a tortious interference with the business relationship between laboratories and referring physicians.

We believe the ERISA preemption clause prohibits plaintiffs' claims because the specific state law provisions that form the basis for those claims

"relate to" a self-funded employee health benefit plan and do not constitute regulation of the business of insurance. In *Adnan Varol, MD, PC v Blue Cross & Blue Shield of Michigan,* 708 F Supp 826 (ED Mich, 1989), several health care providers alleged that the defendant's participation agreement for a pilot health care program violated Act 350 and other state laws. The court held the plaintiffs' state law claims related to an ERISA employee benefit plan and were preempted by the ERISA. There, the plaintiffs challenged the authorization and concurrent review procedures in the program that the defendant administered for General Motors. The court found particularly relevant the fact that the defendant merely was acting as an administrator for a self-funded employee benefit plan agreed to between General Motors and its employees. *Id.* at 832.

Plaintiffs' claims "relate to" an employee health benefit plan under the ERISA. The state insurance regulations that plaintiffs seek to impose on defendant would, if applied, force defendant to alter the way it administers an employee health benefit plan adopted and funded by General Motors. Any finding by a court that changes plaintiffs' standing with Premier PLUS will affect General Motors' distributions under the plan. If defendant is ultimately required to consider and accept plaintiffs as panel providers for Premier PLUS, General Motors' benefit plan will be required to reimburse more providers than it had anticipated. Opening the program to other providers will also weaken the leverage needed to negotiate lower fees with a select group of providers, which is undoubtedly a key reason to adopt such a program in a self-funded plan. See *Stuart Circle Hosp Corp v Aetna Health Management,* 995 F2d 500 (CA 4, 1993) (holding that a Virginia statute, which prohibited

insurance companies from unreasonably discriminating against providers in establishing preferred provider organizations, related to an employee benefit plan). In addition, because insurance laws vary widely from state to state, applying Michigan law in this case would impair the ability of Premier PLUS to function simultaneously in a number of states for multijurisdictional employers such as General Motors. See *United Wire, supra* at 1193.

The next step in the ERISA preemption analysis is to determine the effect of the savings clause. We believe the state law provisions that form the basis of plaintiffs' claims do not regulate the business of insurance under the facts of this case because Premier PLUS is at this point solely a program for self-funded employee benefit plans. Plaintiffs' claims for breach of contract, tortious interference, and antitrust violations are clearly not based on laws aimed at insurance regulation. See *Pilot Life, supra* at 50. The claims under Act 350 and the PPA also do not constitute efforts to regulate an insurance plan. Defendant administers General Motors' traditional option health care program, which would incorporate Premier PLUS, under an "administrative services only" contract. This contract requires General Motors to reimburse defendant for all the covered health care charges paid by defendant on behalf of program enrollees and to pay defendant a fee for administering the program. The health plan is self-funded; defendant does not function as an insurer. If plaintiffs were to succeed in this suit, the state laws they invoke would be used essentially to regulate a self-funded ERISA plan, not an insurance plan. Thus, plaintiffs may not invoke the savings clause in § 514(b)(2)(A).

Plaintiffs argue that, despite its role as administrator in this case, defendant is an insurance company subject to regulation. It cannot wear two

hats. According to plaintiffs, when General Motors or any similarly situated entity sought an administrator for its self-funded health benefit plan, it chose a regulated entity and subsequently took the good with the bad in making that choice. We consider such reasoning circuitous and unacceptable. The fact that the administrator of the program is also an insurance company does not automatically trigger the savings clause. Plaintiffs' argument would create a situation analogous to the one that the deemer clause was created to prevent. Preemption should not depend on the arbitrary distinction between programs with administrators that happen to engage in the business of insurance and those with administrators that do nothing but manage self-funded benefit plans. If there is any arbitrary distinction to be identified, it is whether a plan is self-funded or insured. As the United States Supreme Court stated in *Metropolitan Life Ins Co v Massachusetts*, 471 US 724, 747; 105 S Ct 2380; 85 L Ed 2d 728 (1985):

> We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing we merely give life to a distinction created by Congress in the "deemer clause," a distinction Congress is aware of and one it has chosen not to alter.

See also *Stuart Circle, supra* at 504 (quoting the same Supreme Court case though ultimately holding that preemption applied where the sponsor of a preferred provider plan served as an insurer and the state law applied only to insurers).

On this note, plaintiffs also contend that Premier PLUS is subject to state insurance laws because it is not strictly a program for self-funded employee benefit plans. Rather, defendant devel-

oped Premier PLUS in an effort not only to satisfy General Motors' desire to cut costs with a preferred provider program but also to attract business from other major corporate employee benefit plans. However, General Motors' self-funded plan is apparently the only one enrolled in Premier PLUS at this time. Because this record closed while Premier PLUS was purely a program for self-funded employee benefit plans managed by defendant under an administrative services only contract, we find plaintiffs' claims are preempted under the ERISA.

IV

Defendant's final two claims of error are arguably rendered moot by our decision regarding preemption. We have reviewed the claims because we anticipate the parties will seek further appellate review in the Supreme Court.

The trial court did not err in modifying its October 9, 1991, order by entering its December 20, 1991, order. The latter order enforced the terms of the former and did not improperly modify it under MCR 2.614(C). Nor did the trial court err in finding defendant in violation of the December 20, 1991, order when it issued the March 18, 1992, order.

The trial court did not err in denying defendant's motion for security under MCR 3.310(D).[2] Our review of this issue is limited to determining whether the trial court abused its discretion. *Zapalski v Benton*, 178 Mich App 398, 404; 444 NW2d 171 (1989). MCR 3.310(D)(1) provides:

Before granting a preliminary injunction or tem-

_____

[2] Defendant concedes that it was not allowed security under MCR 2.109 because it was seeking such security to protect it from damages rather than to cover its costs and expenses.

porary restraining order, the court may require the applicant to give security, in the amount the court deems proper, for the payment of costs and damages that may be incurred or suffered by a party who is found to have been wrongfully enjoined or restrained.

MCR 3.310(D)(1) is limited to security for a preliminary injunction or a temporary restraining order. *In re Prichard Estate,* 169 Mich App 140, 149; 425 NW2d 744 (1988). Neither of these is at issue in this case. Although the orders of October 9, November 13, and December 20, 1991, provided for a continuation of an earlier temporary restraining order, the March 18, 1992, order granted a permanent injunction regarding Premier PLUS as long as defendant refused to comply with the PPA. Moreover, where, as here, a full hearing on the merits was held before the issuance of an injunction, the rationale for requiring security is not applicable. See *Felton v Wedthoff,* 185 Mich 72, 80; 151 NW 727 (1915). Thus, neither the language nor the purpose of MCR 3.310(D)(1) supports defendant's argument. The trial court did not abuse its discretion in refusing defendant's request for security.

Affirmed in part and reversed in part.

W. J. CAPRATHE, J., concurred.

WHITE, P.J. *(concurring in part and dissenting in part).* I respectfully dissent from the majority's conclusion that plaintiffs' claims are preempted by the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.* While the words "relates to" have been given a broad meaning, the preemption clause does not preempt laws that have only a "tenuous, remote, or peripheral" effect on an ERISA plan. *Shaw v Delta Air Lines, Inc,* 463

US 85, 97; 103 S Ct 2890; 77 L Ed 2d 490 (1983). It
has been observed:

> A preemption provision designed to prevent
> state interference with federal control of ERISA
> plans does not require the creation of a fully
> insulated legal world that excludes these plans
> from regulation of any purely local transaction.
> [*Rebaldo v Cuomo*, 749 F2d 133, 138 (CA 2, 1984).]

Plaintiffs' breach of contract claim is not
preempted. Plaintiffs have not sued General Mo-
tors or the ERISA plan for breach of contract.
Rather, they assert that the action of Blue Cross
and Blue Shield of Michigan (BCBSM) in unilater-
ally changing the provider reimbursement level
for certain covered services constitutes a breach of
the existing contract. This claim only tangentially
relates to the ERISA plan. It does not address the
relationship between the plan and its subscribers,
but, rather, the prior contractual relationship be-
tween BCBSM and the providers. Congress did not
intend to preempt a state court's application of
general contract law merely because one of the
contracting parties also contracts with an ERISA
plan that might be affected by the first contract.

Furthermore, although the circuit court granted
BCBSM summary disposition with regard to this
claim, I believe there were genuine issues of mate-
rial fact regarding whether BCBSM changed the
reimbursement level in violation of the existing
agreement, or, as claimed by BCBSM, simply
changed the covered services.

Nor are plaintiffs' claims of tortious interference
with business relationships preempted. Again,
plaintiffs have not sued General Motors or the
plan, but, rather, BCBSM. The common law regard-
ing tortious interference, like the law of contracts,

is a law of general application that only tangentially affects the ERISA plan. While it is true that at least one of the actions claimed by plaintiffs to be illegal involves an element of the plan—the plan provision providing that physicians are paid $3 to draw blood if they send the blood to a panel laboratory, but not otherwise—the law that the plan allegedly violates, MCL 445.162; MSA 14.375(22),[1] is a law of general application. Congress did not intend that ERISA plans be exempted from general regulatory laws, addressing traditional areas of state authority, that do not affect relations between the principal ERISA entities—the employer, the plan, the fiduciary, and the beneficiaries. *Firestone Tire & Rubber Co v Neusser,* 810 F2d 550, 553-556 (CA 6, 1987).

With respect to the tortious interference claim, I conclude that plaintiffs' claim should not have been dismissed. To establish a prima facie case of tortious interference with a business relationship, plaintiffs must show: (1) the existence of a valid business relationship (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage. *Bonelli v Volkswagen of America, Inc,* 166 Mich App 483, 496; 421 NW2d 213 (1988). There must be the intentional doing of an act that is wrongful per se or the intentional doing of a lawful act with malice and without legal justification for the purpose of invading the plaintiffs' contractual rights or business relationship. *Id.*

---

[1] While the circuit court determined that this statute was not violated, I believe there was a genuine issue whether BCBSM devised and acted as an intermediary in a plan in which doctors received compensation for sending patient specimens to specified laboratories.

Plaintiffs adequately pleaded a prima facie case, including reference to statutory violations constituting wrongful acts per se, and there was a genuine issue whether BCBSM tortiously interfered with plaintiffs' business relationships.

Additionally, I conclude that plaintiffs' claims under the Prudent Purchaser Act (PPA), MCL 550.51 *et seq.*; MSA 24.650(51) *et seq.*, are not preempted. Assuming for the moment that the PPA "relates to" an employee health benefit plan under the ERISA, the savings clause excepts from the preemption clause laws that regulate insurance. Section 514(b)(2)(A), 29 USC 1144(b)(2)(A). The majority concludes that the state law provisions that form the basis of plaintiffs' claims do not regulate the business of insurance "because Premier PLUS is at this point solely a program for self-funded employee benefit plans." *Ante,* p 582. The majority explains "[t]he health plan is self-funded; defendant does not function as an insurer. If plaintiffs were to succeed in this suit, the state laws they invoke would be used essentially to regulate a self-funded ERISA plan, not an insurance plan. Thus, plaintiffs may not invoke the savings clause in § 514(b)(2)(A)." *Ante,* p 582. In response to plaintiffs' argument that, notwithstanding BCBSM's role as administrator of the GM program, BCBSM is an insurance company subject to regulation, the majority states "[p]reemption should not depend on the arbitrary distinction between programs with administrators that happen to engage in the business of insurance and those with administrators that do nothing but manage self-funded benefit plans." *Ante,* p 583.

I conclude that plaintiffs' claims alleging a violation of the PPA seek to enforce laws that regulate insurance, notwithstanding that in the instant case Premier PLUS was implemented as part of a

self-funded ERISA plan. BCBSM is regulated under a statute that regulates insurance, MCL 550.1101 *et seq.*; MSA 24.660(101) *et seq.* (Act 350), and is regulated under that statute even when it acts only as a plan administrator. Act 350 permits BCBSM to promulgate plans in accordance with the PPA, and the PPA specifically applies to BCBSM as a "health care corporation" incorporated under Act 350. The PPA also specifically regulates third-party administrators the same as insurers. Under these circumstances, I would hold that the PPA is a law "that regulates insurance."

Nor is the insurance savings clause rendered ineffective by the "deemer clause."[2] Plaintiffs do not seek to have General Motors or the plan deemed to be an insurance company. Rather, plaintiffs challenge the process employed by BCBSM in formulating and implementing the Premier PLUS plan. The distinction between "programs with administrators that happen to engage in the business of insurance and those with administrators that do nothing but manage self-funded benefits plans" is not arbitrary. The Legislature has chosen to regulate BCBSM and, recognizing the economic power wielded by BCBSM and other similar organizations, has determined that it is necessary to regulate the manner in which such organizations, including third-party administrators, formulate prudent purchaser agreements and offer participation in such agreements to health care providers. Congress did not intend that BCBSM's activities, comprehensively regulated under state statute, must go unregulated and unchecked when the activity involved is the formulation, implementation, and administration of an ERISA plan, when these activities would otherwise be regulated if the underlying plan was not an ERISA plan. Rather,

---

[2] Section 514(b)(2)(B), 29 USC 1144(b)(2)(B).

Congress intended to defer to the state's regulation of companies, such as BCBSM, that are in the insurance business.

Turning to the question whether plaintiffs have a private cause of action under Act 350 or the PPA, I agree with the circuit court that plaintiffs' remedy under Act 350 was to file a complaint with the Insurance Commissioner to compel enforcement of the act. MCL 550.1619; MSA 24.660 (619). The PPA does not contain a similar restriction, and I conclude that plaintiffs could properly invoke the equity jurisdiction of the circuit court to seek to enjoin implementation of a plan that was not implemented according to the PPA or to obtain other appropriate relief. See *Michigan State Employees Ass'n v Dep't of Mental Health,* 120 Mich App 39; 328 NW2d 11 (1982).

With regard to the antitrust claim, while not approved, the plan was apparently "permitted" by the Insurance Commissioner, and accordingly the circuit court did not err in concluding that the antitrust statute[3] did not apply. Should it ultimately be determined that the Insurance Commissioner will not permit the plan, I would allow plaintiffs to reinstate their claim.

Lastly, I agree with the majority's discussion in part IV and its conclusion that the circuit court did not err in entering its December 20, 1991, and March 18, 1992, orders, or in denying BCBSM's motion for security pending appeal.

---

[3] MCL 445.774; MSA 28.70(4).