# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of IRENE GORNEY.

---

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Plaintiff-Appellant,

v

ESTATE OF IRENE GORNEY,

        Defendant-Appellee.

FOR PUBLICATION
February 4, 2016
9:00 a.m.

No. 323090
Huron Probate Court
LC No. 13-039597-CZ

---

*In re* Estate of WILLIAM B. FRENCH.

---

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Plaintiff-Appellant,

v

DANIEL GENE FRENCH, Personal
Representative for the Estate of WILLIAM B.
FRENCH,

        Defendant-Appellee.

No. 323185
Calhoun Probate Court
LC No. 2013-000992-CZ

---

*In re* Estate of WILMA KETCHUM.

---

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Plaintiff-Appellant,

-1-

v

ESTATE OF WILMA KETCHUM,

        Defendant-Appellee.

No.  323304
Clinton Probate Court
LC No.  14-028416-CZ

_In re_ Estate of OLIVE RASMER.

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Plaintiff-Appellant,

v

RICHARD RASMER, Personal Representative of
the Estate of OLIVE RASMER,

        Defendant-Appellee.

No.  326642
Bay Probate Court
LC No.  14-049740-CZ

Before:  JANSEN, P.J., and CAVANAGH and GLEICHER, JJ.

GLEICHER, J.

In these consolidated appeals, the Department of Health and Human Services (DHHS) seeks recovery of Medicaid benefits paid on behalf of the decedents. Specifically, the DHHS submitted claims in the probate courts to collect the value of the decedents' homes upon their deaths. The estates responded that the DHHS had provided inadequate notice of its estate recovery plans, and violated their rights to due process. The probate courts denied the DHHS's collection attempts in all four underlying actions.

On appeal, the DHHS contends that it complied with statutory notice requirements by informing the decedents of estate recovery provisions in annual "redetermination" applications beginning in 2012, and that the judicial process sufficed to meet due process requirements. This Court recently resolved certain issues raised here in the DHHS's favor in _In re Estate of Keyes_, 310 Mich App 266; 871 NW2d 388 (2015).[1] Accordingly, we must reverse in part the probate courts' orders to the extent they conflict with this precedent, and remand for further proceedings.

---

[1] The Keyes estate has filed an application for leave to appeal this Court's decision in the Michigan Supreme Court. That Court has yet to take action on the application.

The estates, however, raised additional challenges to the DHHS's collection efforts which are issues of first impression for this Court. We hold that the DHHS would violate MCL 400.112g(5) and the decedents' rights to due process by taking property to cover a Medicaid "debt" incurred before the program creating the debt was approved and implemented. We therefore affirm the probate courts' decisions in relation to recovery claims for sums expended between July 1, 2010, and the July 1, 2011 implementation of the MMERP.

I

"In 1965, Congress enacted Title XIX of the Social Security Act, commonly known as the Medicaid act. This statute created a cooperative program in which the federal government reimburses state governments for a portion of the costs to provide medical assistance to low-income individuals." *Mackey v Dep't of Human Servs*, 289 Mich App 688, 693; 808 NW2d 484 (2010) (citation omitted). In 1993, Congress required states to implement Medicaid estate recovery programs. 42 USC 1396p(b). In 2007, the Michigan Legislature passed 2007 PA 74, which added MCL 400.112g though MCL 400.112k to the Michigan Social Welfare Act, MCL 400.1 *et seq*. This legislation empowered the DHHS to "establish and operate the Michigan Medicaid estate recovery program [MMERP] to comply with" 42 USC 1396p. MCL 400.112g(1). MCL 400.112g(5) required approval by the federal government before the MMERP would be "implement[ed]." Michigan finally received approval from the federal Centers for Medicare & Medicaid Services (CMS) for its program (referred to as a State Plan Amendment) on May 23, 2011, and the department circulated instructions to implement the plan on July 1, 2011. *Keyes*, 310 Mich App at 268; Letter from CMS, May 23, 2011, available at <http://www.michigan.gov/documents/mdch/SPA_10_018_Approved_355355_7.pdf> (accessed December 28, 2015). The CMS letter approved this State Plan Amendment in May 2011. The letter attached a form titled "Transmittal and Notice of Approval of State Plan Material." The form indicated that the CMS "received" Michigan's "Proposed Policy, Procedures, and Organizational Structure for Implementation" of a Medicaid estate recovery program on September 29, 2010, approved it on May 23, 2011, and, as to the CMS, deemed July 1, 2010 the "effective date" of Michigan's recovery program. See Letter from CMS; Swanberg & Steward, *Medicaid Estate Recovery Update What You Need to Know Now*, 93 Mich B J 28, 28 (May 2014); Murphy & Johnson, *Estate Planning with the Advent of Estate Recovery*, 21st Annual Drafting Estate Planning Documents, The Institute of Continuing Legal Education (January 19, 2012), available at <http://www.icle.org/contentfiles/partners/seminarmaterials/2012CR6535/> 0122A6535-1.pdf> (accessed December 28, 2015).[2]

In the current cases, the decedents began receiving Medicaid benefits after the September 30, 2007 passage of 2007 PA 74. It is undisputed that the initial Medicaid applications (form DHS-4574) filed by the decedents, or a personal representative on their behalves, contained no

---

[2] As we discuss in greater detail later in this opinion, the "effective date" for the CMS's purposes is not the date that our Legislature identified as the pertinent starting point for the DHHS's recovery efforts. MCL 400.112g(5) provides that the DHHS "shall not implement a Michigan medicaid recovery program until approval by the federal government is obtained."

-3-

information about estate recovery. However, it is also undisputed that in order to remain entitled to Medicaid benefits, each applicant was required to resubmit a form DHS-4574 annually for a "redetermination" of eligibility. Each new DHS-4574 contained a section entitled "Acknowledgments," which the applicant certified that he or she "received and reviewed."

At some point during 2012, all four decedents' personal representatives submitted a DHS-4574 as part of the redetermination process. Beginning in 2012, the acknowledgment section of the form included the following provision:

> I understand that upon my death the Michigan Department of Community Health [now the DHHS] has the legal right to seek recovery from my estate for services paid by Medicaid. MDCH will not make a claim against the estate while there is a legal surviving spouse or a legal surviving child who is under the age of 21, blind, or disabled living in the home. An estate consists of real and personal property. Estate Recovery only applies to certain Medicaid recipients who received Medicaid services after the implementation date of the program. MDCH may agree not to pursue recovery if an undue hardship exists. For further information regarding Estate Recovery, call 1-877-791-0435.

As with previous applications and redeterminations, each decedent's personal representative signed the statement affirming that he or she had received and reviewed the acknowledgments, which included the provision on estate recovery.

Following each decedent's death, the DHHS served claims on the estate seeking to recover the amount the department had paid in Medicaid benefits since July 1, 2010. In each case, the estate denied the claim and the DHHS filed suit in probate court. The estates argued that because the decedents had not received proper notice about estate recovery when initially enrolling in the Medicaid program, the DHHS had failed to comply with statutory notice requirements and violated their due process rights. The estates further contended that the DHHS violated their rights by seeking recovery of benefits dating back to July 1, 2010, one year before the MMERP was approved by the federal government, and approximately two years before any notice was provided to the recipients. This precluded recovery, the estates contended. In all four cases, the probate court rejected the DHHS's claims for recovery against the estates. In Docket No. 323090, the court entered a judgment in the estate's favor after a bench trial. In Docket Nos. 323185, 323304, and 326642, the courts summarily dismissed the DHHS's claims.[3] The DHHS now appeals.

II

We review de novo a trial court's decision on a motion for summary disposition, issues of statutory interpretation, and whether a party has been afforded due process. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013); *Keyes*, 310 Mich App at 269-

---

[3] In Docket No. 326642, however, the court did not resolve the due process issue.

270. As noted, many issues in these appeals were raised and decided by this Court in *Keyes*. Therefore, we are not writing on a clean slate.

III

The estates challenged the adequacy and effectiveness of the notice provided in the final paragraph of the multipage redetermination application. The notice provisions of the MMERP are found at MCL 400.112g(3)(e) and 400.112g(7), and instruct:

> (3) The department of community health shall seek appropriate changes to the Michigan medicaid state plan and shall apply for any necessary waivers and approvals from the federal centers for medicare and medicaid services to implement the [MMERP]. The department of community health shall seek approval from the federal centers for medicare and medicaid regarding all of the following:

> \* \* \*

> (e) Under what circumstances the estates of medical assistance recipients will be exempt from the [MMERP] because of a hardship. At the time an individual enrolls in medicaid for long-term care services, the department of community health shall provide to the individual written materials explaining the process for applying for a waiver from estate recovery due to hardship.

> \* \* \*

> (7) The department of community health shall provide written information to individuals seeking medicaid eligibility for long-term care services describing the provisions of the [MMERP], including, but not limited to, a statement that some or all of their estate may be recovered.

In *Keyes*, 310 Mich App at 272-273, this Court examined these provisions and held:

> We conclude that the timing provision of MCL 400.112g(3)(e) does not apply in this case. MCL 400.112g(3)(e) provides that "[a]t the time an individual enrolls in medicaid for long-term care services, the department of community health shall provide to the individual written materials explaining the process for applying for a waiver from estate recovery due to hardship." Read in isolation, this provision appears to support the estate's position. But we may not read this provision in isolation. [*State ex rel*] *Gurganus* [*v CVS Caremark Corp*], 496 Mich [45, 61; 852 NW2d 103 (2014)].

> Subsection (3)(e) is part of the larger Subsection (3), which requires the Department to seek approval from the federal government regarding the items listed in the subdivisions. In this case, [as in the current appeals], the estate does not assert that the Department failed to seek approval from the federal government concerning the estate recovery notice. Rather, the estate asserts that it did not personally receive a timely notice.

-5-

The Act contains a second provision concerning notice, and this provision has different language. MCL 400.112g(7) provides that "[t]he department of community health shall provide written information to individuals seeking medicaid eligibility for long-term care services describing the provisions of the [MMERP], . . ." When the Legislature includes language in one part of a statute that it omits in another, this Court presumes that such an omission was intentional. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 103; 693 NW2d 170 (2005). Subsection (7) applies to the estate's case because the estate alleges that [the decedent] did not receive sufficient notice of estate recovery. Subsection (7)'s language is similar to that in Subsection (3)(e), but there is one major difference—timing. Subsection (3)(e) states "at the time an individual enrolls in medicaid," while Subsection (7) states that the Department must provide a notice when an individual "seek[s] medicaid eligibility[.]" We presume the Legislature's decision not to use the word "enrollment" in Subsection (7) was intentional.

The facts underlying the current matters are largely indistinguishable from those underlying *Keyes*. Ms. Keyes also first enrolled in Medicaid sometime after September 30, 2007, and was not notified at that time of the estate recovery program. Just as in the current appeals, Ms. Keyes' personal representative did not receive notice of the recovery program until filing an application for redetermination of eligibility in 2012. Just as here, the DHHS did not highlight the change on the form or provide additional materials "explaining and describing estate recovery and warning that some of [the decedent's] estate could be subject to estate recovery." *Id.* at 273. In *Keyes*, this Court held that the inclusion of the new paragraph in the form's acknowledgements section "sufficiently notified [the decedent] that her estate could be subject to estate recovery." *Id.* The statutes have not been amended since *Keyes* and still do not demand a separate notification or that the new provision be highlighted in any manner. Accordingly, we are bound to hold that the notice in these matters was statutorily sufficient and the probate courts erred in concluding otherwise.

IV

The Ketchum Estate also asserts that the DHHS sought recovery in violation of MCL 400.112g(4), which precludes the department from "seek[ing] Medicaid estate recovery if the costs of recovery exceed the amount of recovery available or if the recovery is not in the best economic interest of the state." In support of this argument, the estate contends that its sole asset was a home sold for $30,000, and that the estate's value was whittled away by funeral expenses, administration costs, and certain exempted items.

We note that the probate court did not consider this issue on the record and the estate's appellate argument is cursory. The statutes provide no guidance on the application of MCL 400.112g(4). MCL 400.112j(1) gives the DHHS authority to "promulgate rules for the [MMERP]." The *Bridges Administrative Manual*, BAM 120, p 7, provides: "Recovery will only be pursued if it is cost-effective to do so as determined by the Department at its sole discretion." The Legislature did not direct the DHHS to act "at its sole discretion" and we located no DHHS publication describing how such determinations are made.

That the cost-effectiveness decision is made at the department's "sole discretion" does not preclude all judicial review. For example, the prosecution, another limb of the executive branch, has sole discretion to determine whether to charge a juvenile as an adult and whether to proceed with charges against a suspect. See MCL 712A.2d(1); *People v Morrow*, 214 Mich App 158, 165; 542 NW2d 324 (1995). Even so, the judiciary may review the prosecutor's decisions where they are "unconstitutional, illegal, or ultra vires or where the prosecutor has abused the power confided in him." *People v Gilmore*, 222 Mich App 442, 457-458; 564 NW2d 158 (1997).

A record was not created in the probate court from which we can determine whether the DHHS's decision to seek recovery from Mrs. Ketchum's de minimus estate was unconstitutional, illegal, ultra vires, or an abuse of power. Accordingly, to the extent that we reverse the probate court's summary disposition order, the estate may wish to raise this issue again. At this time, however, we discern no ground to grant relief.

V

The estates in these consolidated appeals have also raised a multipronged due process challenge.

A

This Court rejected a due process challenge identical to one prong, related to notification at the time of enrollment, in *Keyes*, 310 Mich App at 274-275:

> The Fourteenth Amendment to the United States Constitution and Article I, § 17 of the Michigan Constitution provide that the state shall not deprive a person of life, liberty, or property without due process of law. *Elba Twp*, 493 Mich at 288. Where a protected property interest is at stake, due process generally requires notice and an opportunity to be heard. *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 759 (2004). Due process is a flexible concept and different situations may demand different procedural protections. *Mathews v Eldridge*, 424 US 319, 334; 96 S Ct 893; 47 L Ed 2d 18 (1976). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Id.* at 333. The question is whether the government provided "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Petition by Wayne Co Treas*, 478 Mich 1, 9; 732 NW2d 458 (2007) (quotation marks and citation omitted).

> In this case, the trial court determined that applying the Medicaid recovery act would violate Esther Keyes's right to due process because she did not receive notice of estate recovery at the time that she enrolled, as required by MCL 400.112g. However, we have already determined that MCL 400.112g does not require notice at the time of enrollment. Further, the trial court's decision improperly conflated statutory notice issues with the notice issues involved in due

process. In this case, the estate was personally apprised of the Department's action seeking estate recovery, and it had the opportunity to contest the possible deprivation of its property in the circuit court. It received both notice and a hearing, which is what due process requires. See *Hinky Dinky Supermarket, Inc*, 261 Mich App at 606.

Relying on *Keyes*, we are required to reject the estates' due process challenges based on the lack of notice in the original application. The decedents in these appeals received the same notice as Ms. Keyes. The estates had the same opportunity to contest the estate recovery claims in the probate court, and therefore received the notice and opportunity to be heard required to satisfy due process.

B

In a second prong, the estates suggest that they had a due process right to the continuation of the favorable Medicaid law that allowed decedents to receive benefits from the state without having to repay them. "[N]o one has a vested right to the continuation of an existing law." *Van Buren Charter Twp v Garter Belt Inc*, 258 Mich App 594, 633; 673 NW2d 111 (2003). The Legislature changed the law to require that the benefits received be repaid to the state upon the death of the recipient from the recipient's estate. Standing alone, this change in law did not deprive the decedents of their rights to due process. See *Saxon v Dep't of Social Servs*, 191 Mich App 689, 700-702; 479 NW2d 361, lv den 439 Mich 880 (1991) (observing that the Legislature can change welfare laws without violating due process).

C

Under a third prong, the estates contended that the DHHS violated their rights to due process by seeking to recover benefits expended since July 1, 2010, when the DHHS did not notify them of the recovery program until 2012. Had the decedents been notified at or before the initiation of the recovery program, the estates contend, they could have considered their estate planning options and decided whether to continue receiving Medicaid assistance or to preserve their estate. In its appellate brief, the Keyes Estate challenged the DHHS's attempt to retroactively recover Medicaid benefits expended since July 1, 2010, citing MCL 400.112g(5). This Court omitted any consideration of that issue in *Keyes*. Therefore, this is an issue of first impression.

The DHHS asserts that upon a decedent's death, his or her property rights are extinguished. As the DHHS does not seek recovery until the beneficiary's passing, that person is never deprived of his or her property rights, negating any potential due process challenge. The decedent's heirs have only an expectation of inheriting, not a vested right. And MCL 700.3101 restricts and limits an individual's power to divest his or her property by will by requiring the estate to settle the rights of creditors first. Accordingly, until creditors such as the DHHS are paid, the heirs have no property right to assert, the department contends.

We first note that the estates erroneously identified the date on which their due process rights were violated. MCL 400.112g(5) provides that the department "shall not implement a [MMERP] until approval by the federal government is obtained." Federal government approval

was not obtained until May 23, 2011. Accordingly, the DHHS and its predecessor could not "implement" a program until that date. The statute does not define "implement" and we must resort to the dictionary to give this term meaning. *Merriam-Webster's Collegiate Dictionary* (11th ed), p 624, defines "implement" as "[c]arry out, accomplish; *esp*: to give practical effect to and ensure of actual fulfillment by concrete measures" and "to provide instruments or means of expression for." The DHHS did not "implement" the MMERP until it circulated instructions to its employees to begin seeking recovery from estates. This occurred on July 1, 2011, after the CMS approved the plan. However, the DHHS could not "implement" the MMERP *before* the federal government approved it. The DHHS sought "to give practical effect" to its recovery plan by making it "effective" July 1, 2010. This violated MCL 400.112g(5).[4]

Moreover, the DHHS incorrectly posits that the personal representative cannot raise a due process challenge to the department's actions. "Explicit in our state and federal caselaw is the recognition that an individual's vested interest in the use and possession of real estate is a property interest protected by due process." *Bonner v City of Brighton*, 495 Mich 209, 226; 848 NW2d 380 (2014). "[T]he property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Bd of Regents of State Colleges v Roth*, 408 US 564, 571-572; 92 S Ct 2701; 33 L Ed 2d 548 (1972). As noted by the DHHS, the right to inherit is not a definite right; it is an expectancy. See *In re Finlay Estate*, 430 Mich 590, 600-601; 424 NW2d 272 (1988). However, when the personal representatives of the estates denied the DHHS's claims, they were not acting to protect their inheritance interests. Rather, the personal representatives stepped into the shoes of the decedents and fought to protect the interests held by the decedents during their lives, and thereby to settle the decedents' estates in accordance with their wills or the law. See MCL 700.3703. The decedents had a right to coordinate their need for healthcare services with their desire to maintain their estates. The right to dispose of one's property is a basic property right; one of the "strand[s]" in the " 'bundle' of property rights," which includes "the rights 'to possess, use and dispose of it.' " *Loretto v Teleprompter Manhatten CATV Corp*, 458 US 419, 435; 102 S Ct 3164; 73 L Ed 2d 868 (1982).[5]

---

[4] The federal government permits retroactive application, but does not prevent states from enacting statutes restricting the implementation of their recovery plans until after federal approval. See 42 CFR 447.256(c) ("Effective date. A State plan amendment that is approved will become effective not earlier than the first day of the calendar quarter in which an approvable amendment is submitted in accordance with [42 CFR 430.20 and 42 CFR 447.253].").

[5] Respectfully, the partial dissent conflates the respondents' right to challenge the DHHS claims for recovery of estate assets with respondents' "standing" to raise a separate, substantive due process claim. The personal representatives contend that the DHHS violated the MMERP both by applying it retroactively and by failing to provide the decedents notice of its intent to do so. The MMERP does not *force* elderly, care-dependent citizens into forfeiting estate assets. Rather, the MMERP is supposed to provide accurate notice to Medicaid applicants of the parameters, rules, and scope of the estate recovery program so that applicants may make reasoned and informed decisions whether to accept benefits. Respondents in these cases seek to prevent estate

In *In re Estate of Burns*, 131 Wn2d 104; 928 P2d 1094 (1997), the Washington Supreme Court was faced with a due process challenge to the recovery of Medicaid benefits expended *before* that state's recovery program took effect. The Court noted that those "recipients who know of the new legal consequence . . . have the choice whether to accept the benefits knowing that recovery may be had from their estate." *Id.* at 117. It was "realistic" that an individual would consider the financial effects before accepting Medicaid, the Court continued, because that state's Medicaid program covers medical expenses for even minor health concerns. A person might choose to forego a minor procedure to preserve his or her estate. *Id.* "However, recipients of benefits paid before enactment of the statutory provisions would have had no such choice. Application of the statutory provisions in their cases therefore would . . . result in the unfairness for which courts traditionally have disfavored retroactivity." *Id.*

Similarly, in *Estate of Wood v Arkansas Dep't of Human Servs*, 319 Ark 697; 894 SW2d 573 (1995), the Arkansas Supreme Court considered the propriety of recovering Medicaid benefits expended before that state's Medicaid recovery program was enacted. That Court did not treat the challenge as a constitutional issue. Even so, the Court determined that the recovery program "create[d] a new legal right which allows DHS to file a claim against the estate of a deceased," thereby affecting a vested property right held by the Medicaid beneficiary. *Id.* at 701. Changing the nature of Medicaid from "an outright entitlement" to "a loan" "effect[ed] . . . the nature of the ownership of the DHS payments made on her behalf." *Id.* at 702. Therefore, the Arkansas Court held that the recovery program could not be applied retroactively.

The same unfairness exists here. By applying the recovery program retroactively to July 1, 2010, the Legislature deprived individuals of their right to elect whether to accept benefits and encumber their estates, or whether to make alternative healthcare arrangements. The Legislature impinged on the decedents' rights to dispose of their property. Despite that the DHHS does not try to recover until the individual's death, that person's property rights are hampered during his or her life. Between July 1, 2010, and July 1, 2011, the date on which the plan was actually "implement[ed]," the decedents lost the right to choose how to manage their property. Taking their property to recover costs expended between July 1, 2010 and plan implementation would therefore violate the decedents' rights to due process. Accordingly, to the extent that the probate courts disallowed the DHHS's claims for that period, we affirm.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh

---

recovery based on the DHHS's failure to follow the rules. This is no different than challenging the claim of an estate creditor because it was untimely filed or otherwise legally deficient.